70 275¹
s89 302¹

---

# North Packing and Provision Co. v. Western Union Telegraph Co.

1. Telegraph Companies—*Place of Performance of Contract With.*— Where a telegraph message, sent from a place outside of the State is to be delivered in this State, the contract between the sender and the telegraph company is to be performed here, and will be construed in accordance with the laws of this State.

2. Same—*Contracts on Back of Blank.*—The conditions on the back of a telegraph blank, when not assented to, form no part of the contract between the sender and the telegraph company.

3. Same—*Contract Exempting Company from Liability Void.*—A condition printed on a telegraph blank, by which the sender of a message exonerates the company from liability, beyond the amount paid, for an incorrect transmission of the message, is against public policy and void.

4. Same—*Effect of Stipulation Requiring Repetition of Message.*—A

stipulation in a telegraph blank exempting the company from liability for damages unless the telegram is repeated and an additional charge paid, does not protect the company from liability for damages which such repetition could have no tendency to prevent.

5.  Negligence—*Duty of Person Injured by.*—The law imposes upon a person injured by the negligence of another the duty of making reasonable efforts to render that injury as small as possible; and it does not permit him to recover damages for any increase of loss consequent upon a failure to perform that duty.  This rule does not prescribe particular acts, however, but only a line of conduct.  The duty is to make reasonable efforts to render the injury as small as possible; what acts such efforts should consist of, depends upon the circumstances of the particular case.

6.  Burden of Proof—*That a Different Line of Conduct Would Have Reduced Damages.*—A defendant alleging that a different line of conduct upon the part of a plaintiff suing for damages would have reduced the damages, has the burden of proving that proposition.

**Assumpsit,** for failure to deliver a telegram.  Appeal from the Circuit Court of Cook County; the Hon. Abner Smith, Judge, presiding.  Heard in this court at the March term, 1897.  Reversed and remanded.  Opinion filed May 24, 1897.  Rehearing denied.  Opinion filed June 14, 1897.

### Statement of the Case.

Appellant (plaintiff below) was and had been for years prior to August 1, 1893, engaged in the business of slaughtering, packing and selling hogs, and the product thereof, in or near Boston.  Appellant bought the live hogs so used in its business, at the Union Stock Yards at Chicago, at which latter point it had a purchasing agent named L. B. Kent, whose sole and only business was to purchase, pay for and ship the hogs from the Union Stock Yards to the appellant at Boston..  The customary method of doing business was for appellant to send a telegram to Kent at the beginning of each week, or at the end of the preceding week, stating about the total number of cars of hogs he should purchase and ship during that week, and thereupon Kent would make proportionate daily purchases and shipments to appellant, subject at all times to any different or countermanding order from appellant.  In accordance with its usual custom, appellant sent to Kent a telegram on Saturday night, July 29, 1893, instructing him to ship ninety cars of hogs during

the week following.  This telegram was received by Kent
on the following Monday morning, and thereupon Kent
purchased and shipped, on that day, twenty-one cars of
hogs; at 4:15 o'clock in the afternoon of that day (Monday,
July 31), appellant delivered to appellee, at its office in Bos-
ton, a telegram addressed to its said purchasing agent, at
said Union Stock Yards, which read as follows:

"JULY 31, '93.

L. B. Kent, Union Stock Yards, Chicago, Ill.:

Buy nothing Tuesday; average shipment answer for
Wednesday unless low day; week's order unchanged.

NORTH PACKING & PROVISION CO."

At the time of delivering said telegram, appellant paid
to appellee the compensation demanded and required by
appellee, to wit, the sum of sixty-two cents, for the trans-
mission and delivery of the same, it being a day message.

This telegram was received at the branch office of appel-
lee, at Union Stock Yards, on the same day it was sent, at
4:32 P. M., after Kent had gone home.

On Tuesday morning, about six o'clock, Kent called at
appellee's said branch office and inquired if any message had
been received for him, but this telegram was overlooked,
and Kent was informed nothing had been received.  Kent
immediately went to the yards and commenced buying
hogs, under his general orders for the week, and continued
to purchase until about eight o'clock A. M., when the tele-
gram last referred to was delivered to him from appellee's
office, whereupon Kent at once quit buying, paid for the
purchases already made, and shipped the same to appellant.
The purchases so made by him were as follows: 496 hogs,
weighing 141,770 pounds (six double deck car loads); aver-
age price paid, $5.41½ per hundred; total amount paid for
same, $7,678.58.  After receiving said telegram Kent wired
to appellant the information that said telegram had not
been delivered to him until he had bought six cars of hogs,
which message appellant received at Boston at 1:20 Au-
gust 1st.  Afterward, on the same day, C. W. Henderson,
manager of appellee's business at Boston, received from the

agent of appellee at Chicago a telegram, which was in the words and figures following, to wit:

"Boston, Aug. 1, 1893.

C. W. Henderson, Mgr.:

Your 178 yesterday, L. B. Kent, Union Stock Yards, Chicago, signed N. P. & P. Co., check 14 paid, rec'd 4:20 p. m., after addressee had gone home; he called about 6 a. m. to-day at our office in the yards, but through an oversight of a new operator, message was overlooked and was informed nothing received; delivery was finally made at 8 a. m. to-day."

A copy of which last mentioned telegram was afterward delivered by said Henderson to appellant at its office in Boston.

On or about August 5, 1893, appellant presented to appellee the following claim in writing, upon the regular bill head of appellant, to wit:

"North Packing and Provision Co.,

Boston, August 5, 1893.

Sold to Western Union Tel. Co., City.

Claim for loss sustained on account of not delivering message to our buyer, L. B. Kent, when called for by him. The message was finally delivered after six cars hogs had been purchased, as per copies of telegrams attached:

Avg. cost of 6 cars, bot. 8–1–93...........$5.41½
"    "    "    hogs, bot. 8–2–93.......... 4.55
141,770 lbs. hogs. bot.
Aug. 1, 1893, at 86½........ 1,226.31."

After receiving said claim and examining the papers relating thereto appellee declined to pay the same, advising appellant " that the responsibility is limited under the conditions of the message blank in cases of this kind to the amount of telegraph charges, sixty-two cents, which will be refunded to you on application."

Upon the trial of the case it was proved that the only general market place for live hogs in Chicago was at the Union Stock Yards, where appellant, through its said purchasing agent, L. B. Kent, made its purchases; that the price paid for the said six carloads of hogs, bought by him

on August 1, 1893, was the fair cash market value of said hogs then and there.

The hogs bought August 1st were shipped by Kent to appellants at Boston, about 12 o'clock, in the usual way.

The hogs that Kent purchased and shipped were slaughtered and packed by appellant.

Kent had been acting as buyer at the yards for appellant for six years, and during all that time he never sold a shipment of hogs, and did nothing else except to buy and ship them to appellant at Boston.

Appellant then offered and attempted to prove that the fair cash market price of hogs in the market at the Union Stock Yards, Chicago, on and after August 2, 1893, was about $86\frac{1}{2}$ cents per hundred pounds lower than it was on Tuesday, August 1st, when these six cars of hogs were purchased, by reason of the failure and neglect of appellee in delivering the telegram in question; and that in consequence thereof, appellant sustained a loss and damage of about $1,200.

For this purpose the witness, Kent, was asked, among other things, as follows:

" Q.  What was the market price on the next day, August 2d, at the Union Stock Yards?

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;

Q.  What could the same hogs (bought August 1st) have been bought for next morning, August 2d?

Q.  If you made any purchases on the next day, to wit: on August 2d, you will please state what purchases you made, and at what prices?

Q.  What was the fair, cash market price of hogs in the market at the Union Stock Yards, Chicago, on and after August 2, 1893?

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;

Q.  Was the market price on that day, August 1st, higher or lower than the market price on the following day, August 2d, and subsequently? "

Each and all of the foregoing questions were objected to by counsel for appellee as incompetent, irrelevant and

immaterial, and the objections sustained by the court, and exceptions by counsel for appellant.

After having proved the facts hereinbefore shown, and after having offered and attempted to prove the facts and others last above mentioned, appellant rested its case, and the court on motion of counsel for appellee found in favor of appellee and rendered judgment against appellant for costs. From which finding and judgment appellant has taken this appeal.

ALBERT H. VEEDER and MASON B. LOOMIS, attorneys for appellant.

WILLIAMS, HOLT & WHEELER, attorneys for appellee.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

The message was to be delivered in Chicago; the contract was thus to be performed there, and is to be construed in accordance with the law of Illinois. *Lex loci solutiones.* Leake on Contracts, 855.

The conditions upon the back of the message, not having been assented to by appellant, formed no part of the contract; the contention of appellee that its liability is limited to the sixty-two cents paid for sending the message, is not the law in this State. Tyler, Ullman & Co. v. W. U. Tel. Co., 60 Ill. 424; W. U. Tel. Co. v. Tyler, 74 Id. 168; W. U. Tel. Co. v. Harris & Comstock, 19 Ill. App. 347.

A repetition of the message would not have tended to prevent the breach of the contract by appellee.

A stipulation as to repeating a message does not protect the company from liability for damages which repetition could have no tendency to prevent. Fleischner v. Pacific Postal Tel. Cable Co., 55 Fed. Rep. 738; True v. International Tel. Co., 60 Me. 9.

" The law imposes upon a person injured by the negligence of another the duty to make reasonable efforts to render that injury as small as possible; and it does not

permit him to recover damages for any increase of loss consequent upon a failure to perform that duty." Gray on Communication by Telegraph, Sec. 100.

This rule does not prescribe particular acts, but a line of conduct. The duty is to make reasonable efforts to render the injury as small as possible; what acts such efforts should consist of depends upon the circumstances of the case.

When appellant obtained knowledge of the negligence, the hogs were on their way to Boston; it was too late to sell them otherwise than in transit, and whether this was practicable does not appear.

When the hogs arrived, if ever, in Boston, it is probable that appellant could then have sold them in open market, and adding to their cost the expense of carriage and sale, might have thus ascertained the loss, if any there were. But was he bound to do this?

The hogs were not purchased by appellee for sale, but to be manufactured into pork, etc. It does not appear that appellee had any reason for thinking that by at once throwing these hogs upon the Boston market the loss would have been lessened.

What the expense of transferring them to the Boston or any other market and there selling, or what the result of so doing would have been, does not appear.

The burden of proving that a different line of conduct would have reduced damages, is upon the negligent party, appellee. Sedgwick on Damages, Vol. 1, Sec. 227; Shearman & Redfield on Negligence, Sec. 598.

If appellee had complied with its contract to promptly deliver the message, no hogs would have been bought on Tuesday, while, as instructed by the telegram, upon Wednesday the average shipment would have been purchased.

The average shipment appears to have been fifteen car loads per day.

The telegram was delivered so that but six car loads were purchased on Tuesday.

The damage to appellant is the difference in price between the six car loads bought through the negligence of appellee on Tuesday and the cost of such property on Wednesday.

That appellant could have done anything other than its agent did, suspend further purchases, to make the loss less, does not appear.

The judgment of the Circuit Court is reversed, and the cause remanded.

MR. JUSTICE WATERMAN UPON PETITION FOR REHEARING.

Counsel for appellee say that in the statement of facts preceding the opinion of this court, there is an erroneous statement, viz.:  "That it was the habit of Kent to make proportionate daily purchases."

This statement is found in appellant's brief, of which counsel for appellee in their brief said: ˙ "The statement of the case in appellant's brief, although on the whole correct, is wanting in accuracy in one particular and in fullness." Counsel for appellee then go on to say that appellant's brief is inaccurate in declaring that Kent immediately sent to appellant notice that its telegram had not been received until after six car loads of hogs had been bought.

Counsel for appellee failed to call attention to any other inaccuracy.

Quite naturally, this court assumed that what counsel for each side declared to be a fact, was.

Turning to the record, we find that counsel for appellant asked Mr. Kent the following question:

"Q. When you got an order at the beginning of the week, similar to the one contained in the telegram just introduced in evidence, for instance, to buy ninety cars during the week, how did you make those purchases, all in one day, or how?"

To which counsel for appellee, Mr. Holt, said: "I object to that as immaterial and as not brought to the notice of the telegraph company, and therefore not binding upon it."

The objection being overruled, Mr. Kent answered: "A. I used my judgment in purchasing, depending upon the supply and market price.   Some days would be heavier and some days would be lighter; but the general custom was to use my judgment during the week in making the purchases."

We think that the statement made by counsel for appellant and appellee, adopted by this court, and that made by the witness, are equally inconsequential.   The important fact is, that owing to the negligence of appellee, Kent failed to receive an order not to buy, and consequently bought on August 1st at a higher price than he could have purchased on August 2d.

Appellee insists that Kent received the order not to buy at eight o'clock on Tuesday, and that his, Kent's, knowledge of the negligence was, at once, appellant's.

There is no testimony showing when the telegram not to buy was delivered to Kent, but it seems to be admitted that this was done at eight o'clock.

So too, counsel for appellee admitted that the statement of appellant as to the habit of Kent to make proportionate daily purchases, was correct, which admission they now retract.

Whatever may be the fact as to the time of the reception by Kent of this telegram, there is no evidence that Kent when he received the message knew that appellee had been negligent in its delivery.

The testimony is that the hogs were shipped upon a train leaving the Stock Yards at 12 o'clock.   We know that six car loads of hogs must be delivered for shipment a considerable time before the train upon which they are carried actually departs, and that from the time of delivery they are "in transit."   That Kent could, at the time the telegram was received by him, by stopping the carriage, or in any other way, have lessened the loss attendant upon the negligence of appellee, does not appear.

We have been referred to no authority holding, as contended by appellee, that the reception by Kent, a mere agent to purchase, of the delayed telegram, was notice to appellant of the negligence of appellee; nor does it appear that if it were, appellant could have done anything to lessen the loss.

It is quite true that if appellant could, when it learned of the purchase, have at once sold the hogs in the Chicago

market, the difference between the purchase and the net price it could then have obtained, is the measure of damages, but there is no evidence that the hogs were at that time in a place where they could have then been sold in the Chicago or any other market.

The petition for rehearing is denied.