## Economy Light and Power Co. v. Cutting.

1. *Waters—Damage from Overflow—Responsibility.*—Where a person leased water power from the authorities of the Illinois and Michigan canal, and for the purpose of making more power was permitted by the canal authorities to put flash boards on top of a dam in the Desplaines river, under the direction of the canal superintendent, thereby raising the water in the river and flooding an island used for garden purposes, causing damages to the crop thereon growing, *it was held*, that the company was not relieved of its responsibility by the consent of the canal authorities.

2. *Damages—Growing Crop—Overflow of Water.*—Where damages for the destruction of a growing crop is sought to be recovered, the measure of damages is the value of the crop as it was when destroyed, with the right to the owner to mature and harvest or gather it at the proper time. The value of the crop is a matter of estimate or conclusion of the mind to be arrived at from all the facts which would affect it.

3. *Damages—Elements in Arriving at Value of Growing Crops.*— In estimating the value of growing crops destroyed, it is proper to take into consideration the fact that the land was very fertile and productive and that it had produced, for a series of years, crops which were larger and brought better prices than the average.

4. *Damages—When Not Excessive.*—In an action for the destruction by an overflow of water, of two acres of cabbages, some small and some large enough to stop cultivating, half an acre of sweet corn, one acre of potatoes, and also tomatoes and cucumbers, and three acres of land prepared for setting with cabbage plants, the plants in hand ready for setting, the jury assessed the damages at $577.80. *Held*, not excessive.

**Memorandum.**—Action for damages caused by overflow of water. Appeal from the Circuit Court of Will County; the Hon. DORRANCE DIBBEL, Judge, presiding. Heard in this court at the May term, A. D. 1893, and affirmed. Opinion filed December 12, 1893.

The statement of facts is contained in the opinion of the court.

*Instruction on the measure of damages referred to in the opinion of the court:*

" If the jury, acting under the instructions and evidence, find for the plaintiff, and if they further find that the acts complained of in the declaration are proved, and that by such acts plaintiff was deprived of the use of the premises for the remainder of the season in which the overflow occurred, and that by said acts plaintiff's crops growing on said premises were wholly destroyed, then the measure of damages is as fol-

lows: 1st. For the land plaintiff was prevented from tilling or using, if any, its rental value for the rest of the season, if the same is shown in evidence. 2d. For the land where the crop was up, more or less matured, the rental value for the rest of that season, the cost of labor, seed and plants, expended thereon, and the cost of any labor she had bestowed thereon after the planting, if the same is shown in evidence; or, in lieu of the compensation specified in this second paragraph, the value of the crop at the time of its destruction, with the right to the owner thereof to mature the crop and harvest or gather it at the proper time, if the same is shown in evidence. If any witnesses who testified for the plaintiff have given any other basis for estimating plaintiff's supposed damages than those given in these instructions, the jury are directed to disregard such basis and the estimates and testimony founded thereon, and to exclude the same from their consideration of this case."

C. W. Brown, attorney for appellant.

Appellee's Brief, John C. Patterson and John S. Reynolds, Attorneys.

Every injury by means of a water course by throwing the water back upon another riparian owner above is repugnant to the maxim *sic utere tuo alienum non lœdas*, and a species of tort, denominated a "*nuisance*." See Angell on Water Courses, Chap. 10, Sec. 388, p. 555, 7th Ed.

The rule of damages announced by the court in his instruction to the jury is approved by this court in K. & S. Ry. Co. v. Horan, 17 Brad. 650.

Opinion of the Court, Cartwright, J.

This is a suit by appellee against appellant for damages occasioned by appellant flooding her land with water. She obtained a verdict for $577.80, on which judgment was entered.

On the trial it was proved that plaintiff was the owner of an island in the Desplaines River, a short distance above the junction of that river with the Illinois and Michigan canal at Joliet. Below such junction the river constituted a portion of the canal, and was adapted to such use by a dam across the river about a mile below the junction for the purpose of navigation. The island contained about fourteen acres, and part of it was used for garden

purposes. The defendant used water power at this dam leased from the canal authorities. In the spring of 1891, the basin above the dam had become so filled with sediment that the passage of water through the flumes was obstructed, and the dam in consequence did not afford as much power as the defendant wanted. The defendant was entitled to use whatever water was wasted at the dam, and not used in navigation. The canal superintendent promised the defendant to dredge out the basin, but the dredges were farther down the canal, and it was not convenient to bring one up, and therefore the defendant, for the sole purpose of making more power for its use, was permitted to put on top of the dam, under the direction of the canal superintendent, flash-boards, thereby raising the head of water about fifteen and one-half inches, which was subsequently reduced to about twelve and one-half, and afterward to six and one-half inches. The flash-boards, when first put on, flooded the island by raising the water in the river, and caused the damages sued for.

It is contended that defendant was not liable for any damages whatever, for the reason that it put the flash-boards on the dam under authority of the canal superintendent, and that the canal commissioners having control of the dam with power to keep it in condition and repair for use would not be liable for the act. It is true that the work was done under the superintendence of the canal superintendent, who directed how it should be done, but it was done by the defendant and paid for by it. It was not done for any purpose of navigation, or for any public purpose, but at the instance of and by defendant in order to get more power for its use. The evidence did not show that the canal commissioners did anything, and the canal superintendent merely controlled the manner in which the defendant did the work which it was permitted to do for its own benefit. We are of opinion that defendant was not relieved of responsibility by the consent of the canal superintendent.

It is next urged that the damages allowed were excessive and that the court improperly admitted evidence which

tended to produce that result. At the time of the over-
flow there were two acres of cabbages, some small and some
large enough to stop working them, half an acre of sweet
corn, an acre of potatoes, and also tomatoes and cucumbers,
and three acres were prepared for setting with cabbage
plants, and the plants were on hand ready for setting.
There was evidence of the rental value for the rest of the
season of the land not planted, and of the value of the grow-
ing crop at the time of its destruction. It is insisted that
as to the value of the crop destroyed, the evidence should
have been strictly confined to cash market values, and that
this was not done. We are not aware that there is any
market for cabbages not half grown or other vegetables
recently planted, and there was no evidence that such prop-
erty had any market value. No witness stated that they
were the subject of bargain and sale, or that there was any
market which fixed the standard of their value. The value
to be ascertained was the value of the crop as it was when
destroyed, with the right to the owner to mature and har-
vest or gather it at the proper time. That there was no
market standard of such value is clear from the evidence.
That value was a matter of estimate or conclusion of the
mind to be arrived at from all the facts which would affect
it. Such estimate might properly be affected by the quality
of the land in which the crop was growing, and so we see
no objection to allowing the jury to know, as was done, that
this land was very fertile and productive, and that it had
produced for a series of years, cabbages, which were larger
and brought better prices than the average. The crop
would be worth more and a purchaser would pay more for
it with the right to mature and gather it, if set and growing
in that soil than if planted in a sterile soil where it would
not develop and mature. The evidence complained of is
mainly of this class, and we see no error in its admission.
Perhaps some witnesses estimated the damages upon an im-
proper basis, but if so, the court gave to the jury in an in-
struction the proper basis, and carefully instructed them
that if any witness for plaintiff had given any other basis,

they should disregard it and the estimates and testimony founded thereon, and exclude the same from their consideration of the case.    The basis on which witnesses made estimates had been fully ascertained and laid before the jury by cross-examination, and we are satisfied that they fully understood what should be considered by them as legitimate evidence of damage.

As is usually the case the opinions of witnesses as to value differed widely, but those of plaintiff's witnesses sustain the verdict, and we find no sufficient reason to say that the damages were excessive.

Lastly, it is claimed that the suit was begun before any damage accrued to the plaintiff, but the claim is not justified by the evidence.

The judgment will be affirmed.