DETERMINED IN THE

## SECOND DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

## DURING THE YEAR 1906.

---

Chicago & Northwestern Railway Company v. T. F. Stroud et al.

Gen. No. 4,612.

1. NEGLIGENCE—*duty of person injured to minimize damages.* The law imposes upon a person injured by the negligence of another the duty to make reasonable efforts to render that injury as small as possible, and it does not permit him to recover damages for any increase of loss consequent upon a failure to perform that duty.

2. OVERFLOW—*what does not preclude right to recover damages arising from.* The owner of land suffering damages from inundation caused by the construction of ditches, etc., by a railroad company, is not barred from a recovery because of his failure to anticipate a flood and to protect his land therefrom.

3. CROPS—*when testimony as to value of, competent.* It is competent to inquire of witnesses what was the market value of crops at the time of the destruction, without specially incorporating into the question put to such witnesses the proposition as to whether or not such crops might or might not mature.

Action to recover damages for loss of crops. Appeal from the Circuit Court of Whiteside county; the Hon. FRANK D. RAMSAY, Judge, presiding. Heard in this court at the October term, 1905. Affirmed. Opinion filed November 9, 1906.

S. A. LYNDE and C. C. JOHNSON, for appellant.

H. C. WARD and E. A. WOOLEY, for appellees.

(348)

PER CURIAM. The judgment in this case was originally affirmed in an opinion by Mr. Presiding Justice Vickers. A rehearing was afterwards granted, and the cause has been again argued orally. Upon a reconsideration of the testimony and of the legal questions involved, we have reached the same general conclusion originally announced. We have in a few respects modified and added to the original opinion in matters now more clearly brought to our attention, and as so modified we adopt it as expressing our opinion, as follows:

This is a suit brought by appellees against appellant to recover damages for loss of crops upon a farm known as the Stroud farm, claimed to have been occasioned by floods in the years 1902 and 1903. The farm is situated in the southeast corner of Whiteside county in what was formerly known as the Winnebago swamp, and is some 800 acres in extent. Stroud was the owner of the farm and Conroy was his tenant, they being, at the time in question, partners in the management and products of the farm.

Through the middle of this farm, running in a westerly direction, is the so-called Green river, which is a drainage ditch, dug through the Stroud farm, about 20 feet wide, but at the time in question, as a result of the caving and washing of its banks, from 60 to 70 feet wide. This ditch furnishes the sole outlet for the valley to the east of the Stroud farm for a distance of 35 miles or more. Through this valley is drained a large area of country, being in places 6 to 10 miles wide, and as it approaches the Stroud farm narrowing to less than one mile. Substantially all the water that comes into the valley on the east from rains and floods passes through the Stroud farm.

East of the farm the Green river ditch turns towards the north side of the valley and into it runs the Red Oak ditch, which enters the valley from the higher ground on the south about 12 miles to the east, flowing

in a westerly direction onto the Stroud farm, crossing under defendant's railroad about 60 rods south of the Green river, where, at the time in question, it then turned to the north, running parallel with the railroad and emptying into Green river about 10 rods west of the railroad. Two other ditches empty into Green river in the immediate vicinity of the Stroud farm, one on the north about 80 rods east of the farm, known as district No. 2 ditch, draining territory to the north of Green river into the Green river ditch, and the other on the south of the Green river ditch emptying into it immediately at the east line of the farm, known as the McGinnis ditch, which lies between the Green river and the Red Oak ditches.

In the times of flood and high water, and especially in 1902, the Green river ditch overflowed its banks; and the water backed up from the Green river ditch into these other ditches and overflowed out on the land in the valley. The only outlet for the water from these ditches and for the drainage of the territory to the east and the north is through the Green river ditch and across the east part of Stroud's farm, and through the Red Oak ditch.

The defendant's railroad was constructed over this farm in the summer of 1901. It crosses the farm about in the middle, running in a generally northerly and southerly direction. When constructed an embankment 7 or 8 feet high was built requiring the use of a large amount of dirt. The defendant's right of way was purchased from the plaintiff Stroud, and, originally, was 125 feet in width. In the conveyance of this right of way was included the right to excavate and remove dirt from an additional strip 25 feet in width. Afterwards an additional 25 feet on the west side was purchased from him. This 25 foot strip, from which the defendant acquired the right to remove the dirt, lay on the east side of the defendant's right of way, as originally conveyed to it, and about midway be-

tween the Red Oak and Green river ditches south of Green river, but not extending to either of these ditches. In the removal of the dirt in making the embankments from these additional strips of land, as well as from the outer portions of the right of way, pits were created on each side of the railroad, which were about 30 to 35 feet wide and about 3 feet deep.

The original deed from Stroud to the railway company, conveying the 125 foot strip for its right of way, and the right to excavate and remove dirt from the additional 25 feet, was made in 1901, bears date the 9th day of September, 1901, and was acknowledged on the 11th day of October, 1901. It contains release and waiver of any damages to Stroud's lands which have been or may hereafter be caused by reason of the construction, maintenance or operation of a railroad on the granted premises. The deed for the additional 25 foot strip on the west side of the right of way was dated September 17, 1901, acknowledged March 27, 1903, and contains the same release and waiver of damages.

It was claimed by appellant, and there was evidence tending to show, that it was necessary to construct the borrow pits, as there was no other practical way to secure the earth for building the railroad embankments in low land. Appellant's witness, Dike, stated as to this:

"It is the usual, ordinary and customary way of constructing railroad embankments by excavating borrow pits on either side."

As originally constructed the borrow pits on the south side of the river were not connected with the Green river ditch on either side, but there was a space of from 25 to 30 feet left between the borrow pits and the bank of the Green river ditch. Subsequently, the appellee Stroud, consented that appellant might excavate from the borrow pit south of the river on the east side of the railroad into the Green river ditch,

but upon certain conditions stated in the letter herein-after set out. Thereupon appellant excavated a channel about 4 feet wide and 3 feet deep from the borrow pits into the ditch.

The seasons of 1902 and 1903 were very wet, and the rainfall in the months of June, July and August in 1902 in this vicinity, and particularly in this district whose sole drainage outlet was the Green river ditch across the Stroud farm, was extraordinary. It appears that in May the rainfall was from two to three inches above normal, in June from four and one-half to six inches above normal, and in July from four to seven and one half inches above normal. The reports of the rainfall during these seasons show an almost incessant rainfall, as, for instance, at Dixon on June 3, 1902, the rainfall was 2.40 inches, and again at Dixon on July 16th and July 18th, the rainfall on each occasion was from 2 to 2.26 inches. The evidence shows that this general territory was under water in June, 1902, and again in July, and later still in August. There were successive floods overflowing the lower lands to a depth of from two to three feet, and drowning out all the crops.

The amended declaration on which the case was tried in the court below is in three counts.

In the first count the charge relates to an alleged overflow in the year 1902, the date being stated as the 9th day of June of that year, and is, that in the construction of the defendant's railroad across these premises in 1901, the defendant caused a great fill to be made for its roadway and on each side of said fill negligently constructed large borrow pits, and in the construction thereof negligently opened up the banks of the Green river and Red Oak ditches; by means whereof water was caused to flow into these borrow pits and onto and over the plaintiff's land, where it would not have otherwise flowed, thereby destroying the plaintiff's crops, hay and pasture.

The second count relates to an alleged overflow in 1903 and charges in the same manner as in the first count the excavation of borrow pits, and that these borrow pits were negligently constructed and maintained so as to permit water from these two ditches to flow into the borrow pits and onto the plaintiff's land which would not have otherwise flowed over said land, destroying and injuring a crop of corn.

The third count is general in its terms so far as the time is concerned, but is based upon the same charges of alleged negligence in the construction of the borrow pits and in the extension thereof through the banks of these two ditches. There was evidence tending to show that subsequent to the flood in the early part of June there was still a heavier flood in July which overflowed the entire land, causing the water to run over the banks of the Green river ditch at different places onto the Stroud farm and to run over the highway to the east of the Stroud farm.

It was the contention of the appellant that the construction of its railroad and of its borrow pits into the Green river ditch was not the cause of the overflowing of the Stroud farm, but that the overflow would have been occasioned in the same manner and to the same extent had there been no railroad or borrow pits at that point, and that the water was so high and the flood so extensive that the water overflowed the banks of the Green river ditch onto the Stroud farm and would have found its outlet onto the Stroud farm in the same manner and to the same extent, and that this was true not only in June but later in July, and that no crops could have matured on the Stroud farm during that season. The defendant contended that Stroud caused these borrow pits to be connected with the Green river ditch, and that these connections were made at his request and for his use and benefit.

As to the claim of overflow in 1903, and damages resulting therefrom, the defendant contended that

this overflow was not occasioned in any way by the construction of its railroad and borrow pits, and that the water did not come from its borrow pit on the east side of its railroad and south of Green river ditch, as claimed by plaintiffs, onto the plaintiffs' land, but came from across the highway, east of the plaintiffs' land, through the breaks in the highway, which had resulted from the floods of 1902. The defendant contended that, under the deeds to it from Stroud, no claim for damages could be made, either by Stroud or Conroy, on account of overflow in 1903.

The jury brought in a verdict for the appellees in the sum of $2,967.17, and judgment was rendered on the verdict, from which judgment this appeal is prosecuted.

It was urged upon the trial, and is here, that the plaintiff had, not only by the conveyance he had made to the defendant, but otherwise, consented to the construction of the Green river ditch, and borrow pits in connection therewith, and other work done by it. Indeed, it was urged that whatever the defendant had done in this regard had been performed at the request of the plaintiff, and in support of this contention the following letter was introduced:

"KANSAS CITY, Mo., Sept. 20, 1901.
J. F. CLEVELAND, Land Commissioner C. & N. W. R. R. Co., Chicago, Illinois.

DEAR SIR: You may extend this crossing on either side, as far as necessary, beyond your right of way, provided you make a borrow pit between that and Green river, on the east side, that will bring the water back that will be on the level with the low water mark in Green river. In other words, I have a twelve inch tile directly under this crossing that empties into the Red Oak ditch, under the bridge west of your crossing; and, as the Red Oak ditch from this point west is rapidly filling up, I would like to use your borrow pit as a new outlet for the tile; and as there

is little or no fall it will be necessary to hold this borrow pit down to the level, and some device arranged at the lower end to prevent flood-water from backing out into the borrow pit.

I desire also to call your attention to the fact that you have made no arrangement for me to get onto forty acres of land south of this and south of the Red Oak ditch and east of your right of way.

Suggest that you arrange for a low bridge east of your right of way across Red Oak. I have also an indistinct recollection that during our last conversation something was said to the effect that you would not care to take a deed for this property. I did not understand that I have a contract with you for this. I think I have been quite generous with reference to the right of way, and I believe you will send me check for the $571.50 and let me retain the title to the land.

Yours truly,

T. F. STROUD."

We are of the opinion that the plaintiff did consent to the doing of that which the defendant did, but that such consent was coupled with the requirement that some kind of a device should be put in at the lower end of the borrow pit to prevent the flood-tide of Green river backing in it. As the defendant did not prepare any such device, it is responsible for the damage which ensued from such failure. It is also urged by appellant that the plaintiff was bound to put in some such device if the defendant did not. The law does impose upon a person injured by the negligence of another the duty to make reasonable efforts to render that injury as small as possible, and it does not permit him to recover damages for any increase of loss consequent upon a failure to perform that duty. North Packing & Provision Co. v. Western Union Telegraph Co., 70 Ill. App. 275-280; American & English Encyclopedia of Law, 2nd ed., vol. 8, p. 605. But we do not think the above mentioned rule applic-

able to the facts of this case. It does not appear that when the heavy rain came, as a consequence of which appellee's land was flooded, there was anything that appellee could then have done to have prevented the destruction of his property. We do not regard the rule as requiring that some time previous he should, in anticipation of a flood, have protected his premises from the risk to which they were exposed by the conduct of appellant.

Appellant complains of the modification of the following instruction:

"If the jury shall find from the evidence that prior to the construction of the defendant's railroad the surface waters falling upon or flowing over that part of the plaintiff's lands lying south of the Green river ditch and east of the Red Oak ditch naturally gathered into a basin near said Red Oak ditch, and from thence was carried or discharged through a channel into said Red Oak ditch, from whence it was carried and discharged into said Green river ditch, and that in times of high water, the water from said Green river ditch would back up in said Red Oak ditch and from thence through the said channel above described and overflow and flood the plaintiff's lands to the same extent that after the construction of said railroad and the borrow pit on the east side of said railroad and south of the Green river ditch and the opening thereof into said ditch, water did back up through said borrow pit onto said land, then they are instructed that the plaintiffs cannot recover in this case because of any damage to or loss of crops occasioned by the opening of said borrow pit in said ditch."

As given it was modified to read as follows:

"If the jury shall find from the evidence that prior to the construction of the defendant's railroad, the surface water falling upon or flowing over that part of the plaintiffs' lands lying south of the Green river ditch and east of the Red Oak ditch, naturally gathered into a basin near said Red Oak ditch, and from thence was carried or discharged through a channel into said Red Oak ditch, from whence it was carried

and discharged into said Green river ditch, and that in times of high water the water from said Green river ditch would back up in said Red Oak ditch and from thence through the said channel above described and overflow and flood the plaintiffs' lands to the same extent that it did after the construction of said railroad and the opening of the borrow pit complained of on the east of said railroad and south of the Green river ditch, then they are instructed that the plaintiffs cannot recover in this case because of any damage to or loss of crops occasioned by the opening of said borrow pit in said ditch.''

We do not regard the modification such as to justify the complaint made thereof. Its only effect was to make the instruction more intelligible.

Complaint is made that the witnesses who testified for the plaintiffs as to the value of the crops destroyed were allowed to testify what the value of the crops was at the time they were destroyed, without being required, in stating such value, to take into consideration the fact that the crops might never properly mature. An examination of the questions of which appellant complains in its brief shows that what was asked was the fair market value ''of that oat crop at that time,'' and of ''the corn on this land,'' and other like questions. This required the witnesses to take into consideration all the facts and circumstances as they existed, and the probability or improbability that the crops would mature was a matter which the witnesses would necessarily take into consideration in answering the questions. But if it were true that witnesses for the plaintiffs did testify as to the value of the crops at the time of the flood without being required to take into consideration the possibility that the crops would not mature, yet we do not find that the abstract shows any such objection as is now made was made at the examination of these witnesses. Some of this testimony was admitted without any objection being interposed. The rule as

to the basis upon which the value of the crops was to be ascertained is well stated in Chicago & Rock Island R. R. Co. v. Ward, 16 Ill. 521, at page 553. "The measure of damages in this case undoubtedly is the worth of the crop growing at the time it was destroyed, not for immediate use in the condition it then was, but with a view to the use of the ground until maturity, with the right to cultivate and harvest the corn. This is ascertained by the probable amount of corn the crop would produce and the probable value of the same in the market at the market season, deducting therefrom the necessary cost of cultivating and harvesting and taking the same to market. The amount and value are necessarily hypothetical and an opinion upon them can only be formed by taking into consideration the average product or yield of like crops at the place and under like circumstances, and the average value of corn in the market at the place and time of market, and taking into consideration all facts tending to enlighten the mind upon these points. In other words, what would a prudent man have been justified at the time in giving for the crop, with a view to its maturity, with the right to cultivate and harvest the same and to have it reasonably secure from destruction while maturing, under all the lights the facts capable of proof would afford him?" See also the instruction approved in Economy Light & Power Co. v. Cutting, 49 Ill. App. 422.

It is also urged by appellant that while the water came in first through the borrow pit, it also flowed over the highway east of this farm, and hence that this land would all have been flooded and this injury would have been inflicted not more than a day later, had not the appellant performed the work it did. The jury must have found that the preponderance of the evidence was that no water came over the highway east nor over the south dyke of Green river in June; and that the injury inflicted was due to the act of ap-

pellant in cutting through the borrow pit in the Green river without putting in any device to keep back the flood of waters. The evidence is such that we would not be warranted in disturbing that conclusion, nor can we say that the jury ought to have found the other way.

There was a second flood in July, and it is urged that this would have destroyed the crops and that therefore defendant is not liable for their destruction in June. If we should concede (which we do not) that if the crop without anything done or omitted to be done by appellant or that could have been done by appellee would have been destroyed by the July flood, appellee cannot recover for the destruction brought by the June flood, still we are of the opinion that it does not appear that if the crop had not been injured in June it would have been destroyed in July. Under the evidence the probability is that had the corn not been injured in June it would in July have been high enough so that it would not have been destroyed by the flood of that month. It is also probable that had the oats and hay not been destroyed in June, the oats would have been harvested and the hay would have been cut and saved before the coming of the July flood. The court instructed the jury that as to any damage which would in fact have been inflicted by the flood in July the plaintiff could not recover.

While the case is not free from difficulty, we are of the opinion that the jury were fairly instructed and that the evidence warranted the verdict which was rendered.

The judgment of the Circuit Court is affirmed.

*Affirmed.*