JOHN W. FUNSTON, Appellee, *vs.* HARMON HOFFMAN, Appellant.

*Opinion filed February 20, 1908.*

1. APPEALS AND ERRORS—*when a freehold is involved.* In an action at law for damages to plaintiff's crops, caused by defendant's taking up tile on his land with which plaintiff's tile was connected, if the plaintiff asserts and the defendant denies a perpetual easement of drainage and the decision of the case rests upon the determination of that question, which is raised by the assignment of errors, a freehold is involved and the Supreme Court has jurisdiction of a direct appeal.

2. DRAINAGE—*land owner cannot claim some other owner has not consented to constructing ditch.* A land owner who consents to the construction of a system of drains on his land as an outlet for drains from other lands is estopped to deny the existence of a perpetual easement of drainage, under the statute relating to drains by mutual consent, upon the ground that the consent of the owner of some intermediate tract in the system was not legally obtained.

3. SAME—*party cannot claim benefit of drain unless other parties have consented to his use of it.* Before a land owner can claim a perpetual easement of drainage through drains constructed by mutual agreement of other land owners he must have had the consent of the other owners to connect with and use the drains; and

the question whether such consent was given is a question of fact for the jury, under proper instructions.

4. SAME—*when tenant cannot recover for injury to crops after renewing lease.* A tenant from year to year who renews his lease after an adjoining land owner has taken up his tile with which the leased land was connected, and after knowledge as to how such action has already damaged the crops on the leased land, cannot recover from such adjoining owner for injury to the crops from such source during the year for which the lease was renewed.

5. EVIDENCE—*evidence of damages must be confined to damages for which defendant is liable.* In an action by a tenant against an adjoining owner for injury to crops for two successive years, due to the defendant's act in taking up tile on his land, if the tenancy was from year to year and the lease for the second year was made after the plaintiff knew of the injurious effect of the defendant's act, the defendant is entitled to have the evidence of damages confined to the injury to the crops for the first year.

6. SAME—*what evidence is not admissible in action for injury to crops.* In an action for injury to plaintiff's crops from flooding of his lands, alleged to be due to defendant's act in taking up tile on his land with which plaintiff's tile was connected and plugging up the outlet, evidence that other lands not connected with the drain were flooded that year and the crops thereon damaged is not admissible; nor is it proper to prove that more than a year after the injury the plaintiff's tile was flowing freely.

VICKERS, J., specially concurring.

APPEAL from the Circuit Court of Moultrie county; the Hon. W. G. COCHRAN, Judge, presiding.

This was an action on the case brought by appellee in the circuit court of Moultrie county, against appellant, for damages to appellee's crops in 1905 and 1906, caused by the appellant having removed certain tiling through which passed the water drained from the land appellee was cultivating as a tenant of Jacob Dumond. The jury found for appellee and assessed his damages at $400. Appeal is now prosecuted to this court.

It appears from the evidence that appellant, since some time before 1890, had owned the land upon which was situated the outlet of the tile drain in question. At about that

date the next tract east of his land was owned by the heirs of one Isaac Smith, deceased. The tract east of that was owned by one Ascherman, and the tract east of Ascherman's was owned by Jacob Dumond. It appears that Ascherman desired to drain his land, by means of tiling, into an outlet on Hoffman's land, and asked and received permission from Hoffman to cross his land, and from Dumond, the administrator of Smith, to cross the Smith tract with the drain. As a part of the agreement with Dumond it seems that Ascherman agreed, in consideration of $100 paid him by Dumond and the latter's consent, as administrator, to crossing the Smith land, that Dumond might connect to the tile drain two tile drains from his own farm. Said tile drains were so connected, and for some fifteen years or more before the acts herein complained of, discharged the water from the Dumond tract, through the tile drain built in accordance with the permission heretofore spoken of, across the Ascherman, Smith and Hoffman tracts, into the outlet on the latter tract. In 1905 Hoffman caused the tiles composing the portion of the drain on his tract to be taken up and the mouth of the tiling where it entered his land to be plugged. Appellee, Funston, had been renting Dumond's farm for a number of years and had planted it mostly in corn. On account of the drainage being cut off, the water collected in two or more natural depressions on the farm cultivated by him and drowned out the corn grown in such depressions for the years 1905 and 1906. This caused the loss for which he recovered the judgment here in question.

A. J. MYERS, JOHN E. JENNINGS, and W. K. WHITFIELD, for appellant.

JOHN R. EDEN, J. K. MARTIN, and E. J. MILLER, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

A motion by appellee to dismiss the appeal in this case on the ground that no freehold was involved was taken with the case. The issues involved necessarily require this court to determine the existence or non-existence of a perpetual easement in the land of appellant. Such an easement is a freehold interest. (*Wessels* v. *Colebank,* 174 Ill. 618; *Oswald* v. *Wolf,* 126 id. 542; *Chronic* v. *Pugh,* 136 id. 539.) Appellee based his right of recovery upon the existence of a perpetual easement over the lands of appellant. The existence of this easement was denied by appellant and his assignments of error question its existence. This appeal therefore involves a freehold, and the motion to dismiss for want of jurisdiction must be overruled.

The contention is made that the court erred in not directing a verdict at the conclusion of all the evidence. It is insisted that there is no proof in the record that appellant gave his consent to the construction of the drain in question with knowledge that the tiling from Dumond's land was to be connected therewith. Whether or not appellant knew that Dumond and Ascherman had made the agreement above set forth to connect their drains is not clear from the record. Ascherman testifies that he supposed the appellant knew that fact, although he does not remember that he stated it to him directly in terms, and the latter testifies positively that Ascherman said nothing about Dumond connecting with this tile. The evidence heard tends to show that appellant received notice that the Dumond and Ascherman drains were connected, if he did not already know it, some three years before he took up this tile. There is some controversy, however, as to the exact time when this information was received and its character. We think that some of the surrounding facts and circumstances tend slightly to show that the appellant knew, at the time Ascherman's drain was built, that Dumond's drain was to be connected with it. There seems to be no dispute in the

evidence as to Dumond's land naturally draining westerly across the Ascherman, Smith and Hoffman tracts. We do not think the court erred in refusing to take the case from the jury on the ground that there was no proof of consent by appellant.

The further contention is made that the motion to direct a verdict should have been sustained on the ground that there is no evidence that an easement existed over the tract immediately east of the Hoffman tract, which, at the time the drain was put in, was owned by the Smith heirs. The evidence tends to show that Ascherman bought the Smith tract at an administrator's sale shortly after the drain was put in, and that a year or two before this suit was commenced he sold both tracts,—the one he originally owned and the one so purchased,—to Reuben Daugherty. The evidence shows that the only consent that was given to construct a drain across the Smith forty at the time it was made was given by Dumond, as administrator of the estate.

The statute of 1889 (Hurd's Stat. 1905, sec. 1, p. 832,) provides for the construction of either open or covered drains "by mutual license, consent or agreement of the owner or owners of adjoining or adjacent lands, either separately or jointly, so as to make a continuous line upon, over or across the lands of said several owners." Appellant argues that this statute contemplates the consent of the owners of the fee, either in person or by some duly authorized agent. But even if this contention be correct, (which we do not now pass upon,) appellant is in no position to take advantage of the point raised. At the time he gave his consent to Ascherman to drain into his land across the Smith forty no question was raised as to the legal right to build the drain across the Smith forty. Appellant does not deny that he consented that the drain could be extended from this forty across his land and into an open ditch thereon. He had the authority to consent to this arrangement. To permit him now to raise the objection that

the consent of other owners was not properly obtained, and that therefore he could not be held to his agreement, would not be in accord with this Drainage act or sound public policy. Moreover, if any attempt were to be made by the present owner of the Smith tract to raise this question at this late day, after the drain had been allowed to remain for many years after the tract was sold at administrator's sale, it might well be argued that he would be estopped.

The precise question raised here does not seem to have been passed upon by this court, and no authority in point from other jurisdictions hàs been cited. It has been held, however, that the fact that a right of way over private property where the drain is to be constructed has not been obtained is no defense against a special assessment which can be raised by the other tax-payers if the authorities have the right to procure the right of way at any time; that such question is between the authorities and the land owner. (2 Farnham on Waters and Water Rights, sec. 239, p. 1109.) This court has held, if a sewer is constructed over private property with the knowledge of the owner, and he makes no objection thereto and takes no steps to prevent the same, he will thereafter be estopped from making any claim to compensation and the ordinance will not be void because the sewer is over private ground. Neither will the assessment for the construction be defeated on that ground. (*Village of Hyde Park* v. *Borden*, 94 Ill. 26. See, also, *Maywood Co.* v. *Village of Maywood*, 140 Ill. 216; *Leman* v. *City of Lake View*, 131 id. 388; *Walker* v. *People*, 170 id. 410.) It is true, at common law an easement could only be secured by grant or prescription. (*Schmidt* v. *Brown*, 226 Ill. 590.) But under this statute the construction of independent open ditches or tile drains by owners of adjoining lands, and subsequent connection so as to form a continuous system of drainage across the lands of several owners, would by mere acquiescence, and without any special agreement or license, bring the drainage system thus

formed within the statute. (*Ribordy* v. *Murray*, 177 Ill. 134; *Hunt* v. *Sain*, 181 id. 372.) We think all of the decisions that have been rendered construing this statute tend to uphold the conclusion that an owner of land who has given his consent to the construction of a ditch, as did the appellant in this case, is estopped from denying that there is a perpetual easement on his land on the ground that some other owner of land in such a system of drains did not legally consent thereto.

The further contention is made that the court improperly admitted evidence as to the damages to the crops of appellee for the year 1906. There was no written lease between appellee and the owner of the land, Dumond. Appellee had been a tenant on the Dumond land for some years. Both he and the owner, Dumond, testified that the lease was made from year to year, and that the lease for the year 1906 was made in August, 1905. The tiling in question was taken up in the spring of 1905,—not later than April of that year. Appellee testified that when he made the lease for the year 1906 he knew the tile had been taken up and the effect its removal had on his crops for the year 1905, as the heavy rains for 1905 had occurred in July, but that Mr. Dumond said he would try to get the outlet back. There was no attempt to contradict or modify this testimony in any way. This court held in *McConnel* v. *Kibbe*, 33 Ill. 175, that when a tenant leased the premises after the wrongful act of a third party which caused the damages, he has no right against such third party for any damages caused thereby subsequent to the leasing, and that for such damages the action must be brought by the owner as an injury to his fee. We think this decision lays down the correct rule. Appellee, when he leased the ground for 1906, knowing that the tile was out, should have insisted on a lower rent or in being protected in some other way by the landlord. Had the appellee never been a tenant on the farm until the fall of 1905 and when he leased it for 1906 had known that

said outlet had been taken up, it is self-evident that he could not recover from appellant for any injury to his crops for 1906, caused by water standing on his land by reason of the taking out of the tile outlet. The lease being without question from year to year, the same doctrine must apply to appellee as to damages for the year 1906. The following authorities tend to support this conclusion: 3 Farnham on Waters and Water Rights, sec. 957, p. 2761; Jones on Easements, sec. 873.

When a tenant holds over, the tenancy is subject to the covenants and stipulations contained in the original lease only so far as they are applicable to the new condition of things. (24 Cyc. p. 1033; *Clinton Wire Cloth Co.* v. *Gardner*, 99 Ill. 151.) What was said by this court in *Chicago, Peoria and St. Louis Railway Co.* v. *Reuter*, 223 Ill. 387, could only apply to the one that was injured, which in this instance, for the year 1906, would be the landlord and not the tenant. The court should not have permitted the evidence as to the injury to crops for the year 1906 to be submitted to the jury. It is true, the court told the jury, in several instructions, that if the lease was only from year to year, and not for a term of years covering both 1905 and 1906, then the plaintiff could only recover for actual damages to his crops for 1905, and appellee contends that as instructions of this character were given for appellant he waived the right to raise this question here. Appellant objected to the evidence, when introduced, for injury to the crops for 1906, on the ground that the lease was from year to year, and that appellee knew, when he made the lease for 1906, that the tile was not in, but the court overruled his objection, whereupon appellant excepted. We do not think that under these circumstances he can be held to have waived his right by asking the instructions in question.

It is conceded by appellee that, as far as the evidence shows, the verdict for $400 was larger than the damages to the crops for 1905, but he insists in his brief that as there

was proof in the record tending to show that appellant took up the tile for the purpose of compelling Dumond to join in making a drainage district, therefore appellee is entitled to punitive damages, and the jury may not have included any part of the damages for 1906 in their verdict, but may have allowed the excess over and above the actual damages to the crops for 1905 as punitive damages. Even though appellee was entitled to punitive damages, appellant was entitled to have only such evidence as referred to damages for which he was actually liable, submitted to the jury. We think the court committed reversible error in permitting any evidence as to the damages to the crops in 1906 to be considered by the jury.

In this connection some question is raised by the appellant as to the court admitting improper evidence as to the measure of damages to the crops for the year 1905. This court, in *St. Louis Bridge Terminal Railway Ass. v. Schultz*, 226 Ill. 409, laid down the rule to be followed in the admission of evidence as to the measure of damages to growing crops destroyed by overflow. As this present case must be reversed for other reasons, it is unnecessary for us here to discuss the rule governing this question.

The further contention is made that improper instructions were given. The first instruction for appellee told the jury that if they believed, from the evidence, that appellant had agreed with one Daugherty to take up the outlet to the tile so as to compel Dumond to find an outlet for his land in a certain drainage ditch, this would render both appellant and Daugherty liable in damages, and the fact that appellant was sued alone would not release him from liability "for damages to the plaintiff, if said damages were caused in the manner defined in these instructions." This instruction says nothing about the drain in question being laid by mutual consent. It is insisted, however, that the instructions must be taken as a series, and that other instructions clearly set out that requirement. While we have

repeatedly held that the instructions must be considered as a series and that they may supplement each other, yet each instruction must state the law correctly as far as it goes, and there should be such harmony between the instructions that the jury will not be misled. (*Illinois Iron and Metal Co.* v. *Weber*, 196 Ill. 526.) We think this instruction was clearly liable to mislead the jury on the question of consent to lay the tile. The instruction is also open to the objection that it singles out particular facts and prominently calls the attention of the jury to them. *Sullivan* v. *Eddy*, 164 Ill. 391.

A number of instructions were given which referred to the question of consent given by appellant to the laying of this tile by Ascherman. Some of them stated quite clearly that the appellant, in order to have been liable, must have known, at the time he gave his consent to laying the Ascherman tile, that Dumond was to connect with it. Others, considered alone, would cause the jury to believe the court instructed them that appellant was liable if he gave his consent to Ascherman to connect the tile, even though he did not know that Dumond's tile was also to be connected. The second section of the Drainage act of 1889 (Hurd's Stat. 1905, p. 832,) clearly provides that only those can have the benefit of the drain, and connect therewith, who have the consent of all the parties directly interested in said drain, and that without such permission it would be unlawful for any person to connect with said drain. In view of the evidence on the question of consent it was especially necessary that the instructions on this point should have given the law accurately. Whether or not the appellant knew, at the time he consented to laying the Ascherman tile, that Dumond was to drain through it and onto his land was a question for the jury, to be submitted under proper instructions.

Appellant further contends that the court refused to admit proper evidence which tended to show that in December, 1906, the tile on the Dumond land was flowing freely,

232—24

and that therefore it must have had a sufficient outlet. We think the court properly sustained the objection to this testimony. Even though the tile would properly drain the Dumond land at that time, it would not necessarily tend to show that the tile was not stopped up in July, 1905, when the injury to the crops for that year was caused. Neither was the evidence proper which was offered by appellant to show that during the year 1905 other farms in the vicinity, not connected with this drain, were flooded and the crops damaged.

What we have said we think fairly covers all the questions raised in the briefs.

For the errors indicated in admitting improper testimony and giving erroneous instructions the judgment must be reversed and the cause remanded for further proceedings in harmony with the views herein expressed.

*Reversed and remanded.*

Mr. JUSTICE VICKERS, specially concurring:

I concur in reversing the judgment below but I do not concur in all that is said in the majority opinion. Appellee brought an action against appellant for damages to appellee's crops grown upon lands which he had leased from Dumond, for the years 1905 and 1906. In each count of appellee's declaration he charged that the Dumond land, which he had leased, had a perpetual easement to drain the water from the Dumond land through a tile drain which had been laid from east to west across a tract of land owned by Ascherman, thence across another tract owned by Smith and across the lands owned by appellant, Hoffman, where it emptied into an outlet, and that Hoffman wrongfully closed up the drain on his land, by means whereof the water from the Dumond land was held back and not permitted to flow off through said drain. Appellee charged in his declaration that this easement was created by mutual consent by the several owners of land over which the drain was constructed,

in accordance with the second section of the Drainage act of 1889. (Hurd's Stat. 1905, p. 832.) Under that statute, to establish a drain or ditch for the mutual benefit of adjacent land owners, it is necessary that the several owners of the lands over which such drain or ditch is to pass shall consent to the construction of the drain, and without such consent no one can acquire a right, under that statute, to an easement, in the nature of an appurtenance, to have water pass off over the lands of his neighbor.

Appellee having averred the existence of an easement, as an appurtenance to the Dumond land, over the lands of appellant, the burden of proof was upon him to establish the existence of such easement, and a failure to do so entitled appellant to a verdict. There is no evidence whatever in this record that anyone having authority consented to the construction of this drain across the Smith tract. The Smith tract, it must be remembered, was east of appellant's land and west of the Dumond land. The only consent shown by the evidence to construct the ditch across the Smith land was given by appellee's landlord, Dumond, who was the administrator of Smith. The fee in the Smith tract belonged to the Smith heirs. The administrator had nothing to do with the real estate. He had no power to encumber it by giving consent to the establishment of any easement over it, in favor of his own land or that of any other person.

With the Smith tract eliminated from this drainage scheme we have this situation: Ascherman, on the east, consented to the establishment of the ditch over his land. Appellant, on the west, gave the consent for the ditch to pass over his land; but the intermediate tract, belonging to the Smith heirs, was entered and the ditch constructed wrongfully and without authority of law.

It is difficult to see how it is possible that an easement could exist across the Hoffman land, as an appurtenance to the Dumond land, unless the intermediate tract belonging to the Smith heirs was also burdened with the same ease-

ment. It cannot be said, and is not pretended, that any legal right existed in favor of appellee to have the water flow from his land over the Smith tract. The only pretense of right is the establishment of this statutory ditch by a mutual consent, and the only consent shown by the evidence, so far as the Smith tract is concerned, is that given by Dumond, who had no power to give such consent. There is no continuity in the appurtenance from the lands of Dumond to the lands of appellant. Easements, such as highways and drains, in order to be appurtenant to land, must be connected with the land to which the appurtenances appertain. In *Philbrick* v. *Ewing,* 97 Mass. 133, it is held that where, at the time of the conveyance of a house and land, water was supplied to the house through a pipe laid under an oral license across the land of a third person to a highway, where it joined a pipe leading from the main pipe of an aqueduct company, no easement to maintain the pipes across the land of such third person passed by the deed. The right did not belong to the land conveyed and the grantor had no power to convey it as an easement appurtenant. The principle decided in this case is applicable here. The water in this drain, in its passage over the Smith land, could not be in virtue of an easement, because the right did not rest upon the consent of the owner. This situation is met by the majority opinion by invoking the doctrine of estoppel against appellant and in favor of a trespasser and a wrongdoer. This would seem to be a new application of the doctrine of estoppel.

I concur in reversing the judgment of the court below, not only for the error pointed out in the majority opinion, but also for the further error committed by the court in denying appellant's motion for a directed verdict. In my opinion the evidence in this case fails to sustain appellee's declaration.