Stella Libbra and Mack Libbra, Plaintiffs-Appellees, v. Mt. Olive and Staunton Coal Company, a Corporation, Defendant-Appellant.

**Gen. No. 60–O–24.**

Fourth District.

February 28, 1961.

Burroughs, Simpson & Burroughs, Gordon Burroughs, of Edwardsville, and Emerson Baetz, of Alton, for appellant.

Droste & Droste, of Mt. Olive, for appellees.

HOFFMAN, JUSTICE.

Defendant, Mt. Olive and Staunton Coal Company, appeals from judgments entered against it on verdicts rendered by a jury in favor of plaintiff, Stella Libbra, as owner of a 150 acre tract of land in Madison County and plaintiff, Mack Libbra, as tenant of the same premises. They had joined in a suit against the coal company alleging damages to the farm and its crops caused by slack, coal dust and other debris being deposited by the defendant in a stream of water which flowed through the premises. It was contended that by reason of the overflow of the natural watercourse on many occasions over several years time, the slack, dust and debris had been deposited in various quantities at different places on the land involved. Plaintiff, Stella Libbra, as owner, alleged that "the fair cash market value of the land as above-described had been greatly and permanently diminished and depreciated." The plaintiff, Mack Libbra, as tenant, asked for crop damages for the years 1953, 1954 and 1955 based on flooding of the premises in those years with

398

the consequent deposit of the coal mining debris. He was the year to year tenant on the premises for some time, having farmed the place for the past 12 years prior to the time that this suit was filed.

The jury returned verdicts in the sum of $7,300.00 for plaintiff Stella Libbra and $1,700.00 in favor of the plaintiff Mack Libbra. The Coal company filed a post-trial motion to set aside the judgments and to enter judgments notwithstanding, or, in the alternative, to grant a new trial. This motion was denied.

On appeal, the coal company seeks a reversal only, arguing that the trial court erred in failing to direct a verdict in its favor. It no longer is pursuing its request for a new trial. The sole basis of the coal company's argument is that evidence of the wrong measure of damages, as to plaintiffs, was permitted to go to the jury.

The farm involved is crossed by a creek known as a branch of Silver Creek. Upstream was a coal mine which was operated by the defendant Mt. Olive and Staunton Coal Company. The operation of the mine resulted in accumulations of quantities of waste or debris in the nature of coal dust, and this debris was liberated in the water of the creek. When high water receded, quantities of this were left on bottom land of the Libbra farm. Corn was planted on the Libbra bottom land in 1953, corn and sorgo in 1954, and corn in 1955. Prior to the planting in 1953, the creek had overflowed and, upon examination, coal debris was found. In 1954, there was a flood in April, and in 1955, there was a heavy flood in June which left heavy deposits of coal debris. Crops were also planted in 1956, 1957 and 1958 and even afterwards but no damages are claimed for any years other than the years 1953, 1954 and 1955. There was no crop failure until 1953. The tenant testified that there probably was coal dust before 1953 but there was none that would really hurt

the crop before then. Coal dust could be seen in 1952 but in June of 1953 when the premises were flooded, there was a great deal more.

Because damages are measured differently for the tenant than for his landlord, we must review the action separately.

Insofar as the landlord is concerned, her evidence at the trial, pertaining to her damages, was limited solely to a showing diminution of market value of her farm after the contamination. Defendant contends that this is a proper measure of damages *only* when the injury to the land is permanent. Defendant then argues that there was a total failure of any evidence from which permanent injury to the land could be concluded, and that, therefore, defendant was entitled to a directed verdict.

There was testimony that corn would not grow in the areas affected due to its acidity and that, in order for crops ever to grow again, the contamination would have to be removed and the soil neutralized. It appeared that lime might be used as a neutralizer, but that there would have to be laboratory tests taken to determine whether this would be feasible. It was suggested that nature itself might, in time, restore the fertility of the soil. Various witnesses testified as to the value before and the value after the contamination caused by the deposit of coal debris. The verdict for Mrs. Libbra was within the range of this testimony, as the witnesses' appraisal of the damage varied from $1,300.00 to $12,090.00.

What is the proper rule of damages insofar as the plaintiff, Stella Libbra, is concerned?

15 Am. Jur., Damages, Section 106, states on page 514:

> "There is no fixed rule for determining the measure of damages for injuries to, or destruction of, property in every case. The amount to be awarded

depends upon the character of the property and the nature and extent of the injury, and the mode and amount of proof must be adapted to the facts of each case. In ascertaining the damages to be allowed, the jury may consider all the circumstances connected with the injury."

15 Am. Jur., Damages, Section 107, states on page 515:

"No hard and fast rule can be laid down, however, for the measurement of those damages; whatever rule is best suited to determine the amount of the loss in the particular case should be adopted."

The question here presented is whether or not a fair determination of the damages to the owner of the farm could be arrived at by testimony of the value of the premises before there was any contamination as compared with the value of the premises after the land was contaminated.

The courts have previously considered the probative value of such testimony, See Ottawa Gas, Light and Coke Co. vs. Graham, 28 Ill. 73 (78); Jones v. Sanitary Dist. of Chicago, 252 Ill. 591, 97 N.E. 210; Canteen Hunting & Fishing Ass'n v. Schwartz, 128 Ill. App. 224 (226); Miekley v. General Roofing Mfg. Co., 179 Ill. App. 493 (496); Hubele v. Baldwin, 332 Ill. App. 330 (334), 75 N.E.2d 125 (127); Phoenix v. Graham, 349 Ill. App. 326, 110 N.E.2d 669.

■ In our present case, the evidence showed damage to the owner's farm by the deposit of debris resulting from the operation of the coal mine; that the land was too acid to grow a crop; that the debris measured in various depths from ½ inch to 18 inches, and that it was deposited at irregular intervals, making it difficult to farm portions of the premises upon which there was no debris. Although it might be argued

401

from the evidence that there was a possibility that the land might be reclaimed or restored by nature or some artificial neutralizing agent, it is well to note that "laboratory tests would have to be conducted to determine if it were feasible." In other words, we cannot say from the record before us that it is reasonable to believe that the premises could be completely restored by any certain process, natural or otherwise. Consequently, we think that to permit a showing of value before contamination and value after contamination was a reasonable approach to the measurement of the damages sustained. Presumably, the fact that the land might eventually be restored to fertility was taken into consideration by the witnesses in arriving at the values after contamination. Moreover, it should be noted that the abstract reveals no objection by the defendant to the opinion evidence on the value at the time the evidence was introduced.

■■■■■ Furthermore, the defendant coal company must have thought that damages could be measured in that manner, as it likewise introduced evidence of value before contamination and evidence of value after contamination. Since defendant acquiesced in this approach to the measure of damages, this court is not receptive to its complaint concerning the trial court's action in this regard. We have often stated that the parties cannot try a case on one theory in the trial court and adopt a different theory in a court of review. As a corollary to this rule, a party cannot allege on appeal, error arising from a theory acquiesced in by him in the trial court; he must adhere to the theory or position accepted by him below. Blanchard v. Lewis, 414 Ill. 515 (521), 112 N.E.2d 167 (171); Bryant v. Lakeside Galleries, 402 Ill. 466 (474), 84 N.E.2d 412 (416), 2 I.L.P., Appeal and Error, Section 674.

If the coal company felt that a different measure of damages would have lessened the amount, it should

have introduced evidence to support its theory. As we said in Mowery v. City of Mounds, 245 Ill. App. 338, on page 345:

> ". . . we are of the opinion and hold that if the person whose property is damaged offers proof without objection, on the theory that the measure of damages is the difference between the value of the article before and after the injury, that if the person liable therefor insists that the damages should be the cost of repair, taken together with the difference, if any, in the value of the article after repair and before injury, he should offer evidence in support of that theory so that the jury may have such evidence before them to act upon in fixing the damages. This appellant has failed to do. It is therefore not in position to complain as to the measure of damages adopted by the court and jury."

With regard to the tenant, who sued for his crop loss during the years 1953, 1954 and 1955, the defendant argues that the measure of damages was not the ultimate market value of the crop, but its value when lost. Defendant further argues that a tenant cannot claim damages for a crop loss after he knows that the ground's fertility has been impaired. Based on these two contentions, defendant claims it was entitled to a directed verdict against the tenant, and, as in the case of the landlord, seeks only a reversal in this court.

Testifying to his own damages, the son gave the number of bushels per acre of yield of the contaminated land compared with the number of bushels per acre of yield in the portion not damaged by the coal debris. The average was 85 bushels in the good land and 30 bushels where the debris was. He testified what the crop brought and also what the price of corn was for the 3 years.

The crop damages evidence consisted of the showing of a reduced crop and the market value of what the crop would have brought had it been a good crop. Based on the plaintiff's testimony for the years 1953, 1954 and 1955, the total loss came to $2,047.20. His verdict was $1,700.00.

■ The courts have many times pointed out that the measure of damages to growing, unmatured crops is the value of the crop as it was when destroyed with the right of the owner to mature and harvest it at the proper time, and that showing what crops allegedly destroyed by the overflow of water would yield if allowed to mature and showing the market value thereof at the time of the maturity was not the proper way of proving damages. Zuidema v. Sanitary Dist. of Chicago, 223 Ill. App. 138.

■ In the case of Baltimore & O. S. R. R. Co. v. Stewart, 128 Ill. App. 270, it was held that when the crop is not up the damages should be estimated upon the basis of the rental value and the cost of the seed and labor. Where the crop is more or less matured so that the product can be determined, the loss is the value of the crop at the time of the loss and only when the crop is fully matured and ready to be harvested can the damages be determined by the market value of the crop less the marketing cost. See also St. Louis Merchant's Bridge Terminal Ry. Ass'n v. Schultz, 226 Ill. 409, 80 N.E. 879, and Economy Light and Power Co. v. Cutting, 49 Ill. App. 422. In these latter cases, it was pointed out that immature crops have no value on the market as such and the value of the crops at the time of a loss together with the right to harvest is the proper basis for measuring damages to the destruction of crops. This value is to be estimated based on all the facts which affect it.

■ ■ Here, again, we note that no objection was made by the coal company to the tenant's evidence on

measure of damages. Improper evidence should be objected to at the trial in order to permit the correction of the erroneous evidence. It is not proper to charge a trial judge with error in the reviewing court without having brought it to his attention in the trial court so that a new trial could have been granted if advisable. A party will not be permitted to raise objections to evidence here which were not urged in the trial court below. Town of Cicero v. Industrial Commission, 404 Ill. 487, 89 N.E. 2d 354 (360). In C. & N. W. Ry. Co. v. Stroud, 129 Ill. App. 348, objection on appeal was made to the proof put in evidence of the value of destroyed crops, and the reviewing court pointed out that there was no objection made at the time of the examination of the witness. In the case of Ascher Bros. v. Industrial Com. 311 Ill. 258, 142 N.E. 488, our Supreme Court stated on page 261:

> "Incompetent evidence, when not objected to, may be received and given such probative value as it naturally carries."

Based on the record before us, we are in no position to say that the coal company is entitled to a directed verdict in the tenant's case. But, should the tenant be allowed more than one year's loss? In Funston v. Hoffman, 232 Ill. 360, 83 N.E. 917, it was held that a tenant could sue only for damage to crops for one year, and not succeeding years, after he knew the effect of the wrongful act of the defendant. In that case, the defendant had removed some tile through which waters of the plaintiff's premises had drained. The tenant knew of the effect of this on the land when he renewed his lease for the second year. This principle was also announced in McConnel v. Kibbe, 33 Ill. 175.

However, there are cases which permit a tenant to recover damages for each succeeding year notwith-

standing the fact that he has knowledge of the condition. The damages complained of in such cases are referred to as continuing damages, and suit is permitted for such damages as long as the original obstruction remains. Where the item which causes the damage is based on negligence, the party damaged is not bound to assume that the negligence will continue and therefore be permanent. Thus, for example, where a railroad company built a faulty bridge over a stream, the party suffering damage had a right to regard the nuisance as transient and could sue for the injury as he suffered from its continuance. See Chicago, B. & Q. R. R. Co. v. Schaffer, 124 Ill. 112, 116 N.E. 239; Indiana, I. & I. R. R. Co. v. Patchette, 59 Ill. App. 251; St. Louis, A. & T. H. R. R. Co. v. Brown, 34 Ill. App. 552; 12 ALR 2d, page 1235.

▉ The crop damages in this case are not exactly like the crop damages in any case cited. Here there was a repetition of flooding during the three years involved. True, there was a residue of debris from previous years but each year brought a new flooding and a new deposit of coal dust over debris. Thus, it appears to us that this case is more like the negligence case which could be prevented and we believe it reasonable to have permitted the tenant to recover for the three years inasmuch as the nuisance was renewed each year. It is not the same as though there was one flooding and one complete damage at one time. This case was one of a repetition of flooding and a repetition of damage to the crops.

▉ However, we do not see how there could have been a verdict for the tenant in excess of $1,364.80. The evidence supported a maximum loss of $2,047.20 and the jury's verdict for him was $1,700.00. But the tenant under his leasing agreement would have to ac-

count to the landlord for one-third of any crops raised. A tenant in possession of the land on a year to year lease has the right to sue for all the damage to the crops and an injury to annual crops is an injury to the possession and the right of action for such injury lies in the tenant. Nevertheless to allow a tenant to recover the full amount of the crop damages, where the landlord is also recovering for his injury to the land, would be unconscionable for it would permit a double recovery for the landlord. Here, the landlord was awarded a verdict by the jury based on the difference between the value before and the value after the contamination. In making proof of damages in this manner, the landlord is compensated for all damages including her share of any crop loss. Canteen Hunting & Fishing Ass'n v. Schwartz, supra.

We therefore feel that the extent of the tenant's damages would be two-thirds of the sum of $2,047.20, which amounts to $1,364.80.

Accordingly, we affirm the judgment of the plaintiff Stella Libbra, and we set aside the judgment in favor of the plaintiff, Mack Libbra, and enter judgment here in favor of the plaintiff, Mack Libbra, in the sum of $1,364.80.

CULBERTSON, Jr., P. J. and SCHEINEMAN, J., concur.