## PEOPLE'S SERVICE DRUG STORES, INC., *v.* HARVEY L. SOMERVILLE.

[No. 95, October Term, 1931.]

*Decided January 14th, 1932.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Parke, and Sloan, JJ.

*F. Brooke Whiting* and *Walter C. Capper,* for the appellant.

*Fuller Barnard, Jr.,* with whom were *Saul Praeger* and *Joseph H. A. Rogan* on the brief, for the appellee.

Adkins, J., delivered the opinion of the Court.

The appellee sued the appellant for alleged injuries resulting from taking three capsules, each containing one-fourth grain of strychnine with other ingredients, compounded by appellant on the prescription of a regularly licensed physi-

cian, practising in Cumberland, Md. The jury found a verdict for appellee, and this appeal is from a judgment on that verdict.

The capsules were taken at intervals of two hours, as directed by the prescription. Following the taking of the third capsule, plaintiff became stiff and could not get up from his chair or sit down. According to his testimony and that of several physicians, from that time he has been in a weakened and nervous condition, and they attribute that condition to an overdose of strychnine. The testimony of several physicians and druggists offered by plaintiff is that the ordinary dose of strychnine is one-thirtieth of a grain. Two of these physicians testified that ordinarily one and one-half grains was a fatal dose. One of them said that one-half grain is the least that would cause death, and that a case was reported where fifteen grains was not fatal. It was also testified by medical witnesses for plaintiff that the effects of strychnine are usually eliminated from the system within a few hours.

The prescription was accurately filled. The complaint here is, not that the druggist failed to follow directions, but that he did not refuse to fill the prescription prescribed because the dose prescribed was too large; that he filled the prescription "without making any inquiry of the purchaser either as required by the Maryland Statute (Code, art. 27, secs. 456, 457)—or any other inquiry of the physician or the purchaser."

The sections of the Code referred to provide as follows:

"456. It shall be unlawful for any person to retail any of the following poisons: arsenic * * * strychnine * * * without distinctly labeling the box, vessel or paper in which the said poison is contained with the name of the article the word 'Poison' and the name and place of business of the seller."

"457. Nor shall it be lawful for any registered pharmacist or other persons to sell any of the poisons in section 456 enumerated without causing an entry to be made in a book kept for that purpose, stating the date of sale, the name and

address of the purchaser, the name of the poison sold, the purpose for which it is represented by the purchaser to be required, and the name of the dispenser, such book to be always open for inspection * * * and to be preserved for at least five years. The provisions of this section shall not apply to the dispensing of poisons in not unusual quantities or doses, upon the prescription of practitioners of medicine. Any violation of the provisions of sections 456 and 457 shall make the offender liable to a fine of not less than five dollars and not more than one hundred dollars."

The only violation of either of these sections of which there is any evidence (assuming that the testimony of Mrs. Somerville, without the offer of the box, was admissible) is that the box was not labeled "poison" or "strychnine." And there is no evidence that this violation was the proximate cause of the injury complained of. The violation of a statute will not support an action for damages on account of an injury sustained, unless such violation is the proximate cause of the injury. *Balto. & O. R. Co. v. State, use of Miller*, 29 Md. 252; *McMahon's Case*, 39 Md. 438; *McDonnell's Case*, 43 Md. 534; *Reidel v. Phila., W. & B. R. R. Co.*, 87 Md. 153, 39 A. 507; *Hopper, McGaw & Co. v. Kelly*, 145 Md. 161, 125 A. 779.

It is confidently asserted in the brief of appellee that the rule "that the registered pharmacist—cannot escape liability in compounding and dispensing poisons in deadly and unusual doses even though the physician's prescription called for such dosage, is supported by all of the best considered decisions of the common Law Courts of England and America." And he cites a number of cases dealing with the high degree of care required of pharmacists. But not one of them supports the contention as applied to the facts of this case. The case of *Tombari v. Connors*, 85 Conn. 231, 82 A. 640, much relied on by appellee, was dealing with the failure of the druggist to fill the prescription correctly, and this is true of most of the cases which have to do with the liability of druggists for negligence.

Here no witness testifies that the dose prescribed was necessarily deadly. On the contrary, the weight of the testimony is that one and one-half grains is the average fatal dose; that the effects of strychnine are eliminated from the system in about four hours; and that the quantity that can be safely given is variable, depending upon the individual and his condition at the time. If the effect is eliminated in four hours, and the plaintiff had continued to take the one-fourth grain capsules at intervals of two hours, there might have remained in his system at any one time the effect of only half a grain. This conclusion is not inconsistent with the fact that plaintiff suffered ill effects after taking three-fourths of a grain. One of the plaintiff's expert witnesses testified that doses of strychnine as low as one-twentieth grain have been known to kill. But it would hardly be argued that it would be negligent for a druggist to fill a prescription calling for such a dose.

The question here is under what circumstances should a pharmacist set up his judgment against that of a licensed physician?

No witness has undertaken to say that ordinary care would have required any pharmacist to decline to fill the prescription in this case; and ordinary care, in view of the nature of the business, is the test. Of course, if a druggist is negligent in filling a prescription, he cannot escape liability because the doctor who wrote the prescription is also liable.

But it does not follow, because a physician in a given case is liable, that the druggist who filled the prescription is also liable. It would be a dangerous principle to establish that a druggist cannot safely fill a prescription merely because it is out of the ordinary. If that were done, many patients might die from being denied unusual remedies in extreme cases. Of course this does not mean that pharmacists can safely fill prescriptions calling for doses that are obviously fatal; or that where the doses prescribed appear to be unusual the prescription can be safely filled without inquiry of the physician to make sure there has been no error. There is no evidence that this precaution was not taken in the present case;

but, even if it was not, that would be immaterial here, because the result of such inquiry would have been to confirm the prescription, as the physician who wrote it testified that it was his usual prescription in such cases.

Our conclusion is that defendant's A prayer for a directed verdict should have been granted. This conclusion makes it unnecessary to consider objections to other prayers and other exceptions.

*Judgment reversed without a new trial, with costs to appellant.*