688 P.2d 1172

**Woody WING and Gary Goulet, Plaintiffs-Appellants,**

v.

**Mac MARTIN and Jane Doe Martin, husband and wife, Mike Martin and Jane Doe Martin, husband and wife, Jeff Martin and Jane Doe Martin, husband and wife, and John Does 1–5, all dba Mac Martin and Sons, and San Tan Ranches; and William Anderson and Jane Doe Anderson, husband and wife, and E.I. DuPont De Nemours & Co., a foreign corporation, Defendants-Respondents.**

No. 14790.

Supreme Court of Idaho.

Sept. 25, 1984.

G. Lance Salladay, of Risch, Goss, Insinger & Salladay, Boise, for plaintiffs-appellants.

Robert M. Tyler, Jr. and Todd Jennings Wilcox, of Elam, Burke, Evans, Boyd & Koontz, Boise, for defendant-respondent San Tan Ranches.

Phillip Stephen Oberrecht and Donald DeWitt Saint-Just, Moffatt, Thomas, Barrett & Blanton, Chartered, Boise, for defendant-respondent E.I. DuPont de Nemours & Co.

UPON DENIAL OF REHEARING

SHEPARD, Justice.

Plaintiff Woody Wing owns some farm property in Elmore County. Adjacent to that property is another parcel owned by the Montierth family. The Wing property and the Montierth property were leased by defendants Martins, Andersons, and San Tan Ranches (hereinafter collectively referred to as "San Tan") from May 26 to November 15, 1978, for the purpose of growing potatoes. Defendants applied to that land an herbicide manufactured by DuPont. At the expiration of defendants' lease of the land, plaintiff Wing leased the property from the Montierths and planted crops on it and on his own land, which crops emerged stunted and withered and eventually died. Plaintiffs contended that their crop damage was due to defendants' use of the herbicide, and filed action against the defendants San Tan-prior lessees and DuPont.

The trial court granted summary judgment in favor of defendant DuPont de Nemours & Co. as to all causes of action, including those counts set out in the complaint pertaining to the Montierth property and to plaintiff Wing's property. We affirm summary judgment for DuPont as to all claims relating to all lands in question in this lawsuit, whether they be lands leased by or lands owned by plaintiffs.

As to defendants San Tan, et al., the trial judge granted summary judgment dismissing all of plaintiffs' claims, with the exceptions of Counts Three and Five of the complaint, which two counts claimed damages sustained by Wing to his own property. The trial judge certified an interlocutory appeal to this Court, pursuant to Rule 54(b), I.R.C.P., for our review of the summary judgments so granted. Our decision today affirms the court's holding as to Goulet's and Wing's claims arising from their lease of the Montierth property. Our opinion is, however, not dispositive of any claims plaintiffs have against San Tan, et al., for alleged damages to lands other than those owned by the Montierths.

In plaintiffs original complaint against DuPont, it was alleged that DuPont had known through its authorized agent that misuse of the herbicide (Lexone) was occurring and had failed to take appropriate action to prevent such misuse. Amended complaints were later filed, in which it was alleged that DuPont had negligently failed to give reasonable warnings or to properly

label the product Lexone to disclose its tendency to leave the soil unfit for certain crops. The district judge found that the amended complaint as to DuPont constituted a new cause of action rather than an amendment to the original complaint; that the new cause of action accrued when the chemical was sold to the former lessees-San Tan in the summer of 1978; and that the two-year statute of limitations, I.C. § 6–1403(3), had run on the cause of action for failure to properly label the Lexone. The trial judge further noted that, even were the Products Liability Act inapplicable, the action, as amended, would be barred by the three-year statute of limitation on actions for injury to goods or chattels, I.C. § 5–218(3). The judge, therefore, entered summary judgment for DuPont on several independent bases, *i.e.*, that the cause of action of the amended complaint was time-barred; that the failure to label, if such failure existed, did not proximately cause plaintiffs' injuries; that DuPont owed no duty to plaintiffs, and thus no negligence was shown; that no action for strict liability would lie, since only a user or consumer of an alleged defective product might bring an action in strict liability; and that, since plaintiffs' losses were purely economic, those losses could not support a negligence or strict liability claim in products liability law.

■ I.R.C.P. 15(c) provides, "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Here the trial court held that the proffered amendment constituted a new cause of action, rather than merely a modification of the original claim. Where, by way of amendment, a party is setting forth a new cause of action, it does not relate back. 6 Wright & Miller, Federal Practice and Procedure § 1497, pp. 489–492 (1971). *See Mitchell v. Flandro*, 95

Idaho 228, 232, 506 P.2d 455, 459 (1972); *Denton v. Detweiler*, 48 Idaho 369, 282 P. 82 (1929).

■ Plaintiffs' amended complaints alleged wrongful conduct by DuPont arising at a different time and with regard to a different set of facts than those involved in the original complaint. While the original complaint alleged that DuPont knowingly allowed misapplication of the chemical, the amended complaint asserted inadequate labeling by DuPont, an omission to act occurring at a different time and location. Since the original complaint did not give notice of the legal theory advanced in the amended complaint, the amendment was a new cause of action which did not relate back. Amendment to pleadings should be allowed within the discretion of the trial court, and such exercise of discretion will not be disturbed absent a showing of clear error. *Ada County Highway District v. Acarrequi*, 105 Idaho 873, 673 P.2d 1067 (1983); *Wheeler v. McIntyre*, 100 Idaho 286, 596 P.2d 798 (1979). We find no abuse of the trial court's discretion in his refusal to allow the amendment to relate back to the original filing date.

■ The cause of action alleged in the amended complaint is thus deemed to have been brought on its filing date, November 20, 1981, and, as such, it is barred. The trial judge determined, and we agree, that the statute of limitations is two years, under the applicable section of the Products Liability Act. *See* I.C. § 6–1403(3). That section prohibits the bringing of a products liability action more than two years from its accrual as defined in I.C. § 5–219.[1] Under I.C. § 5–219, a cause of action accrues at the time of the wrongdoing, rather than at the time of discovery of the wrongful act. *Owyhee County v. Rife*, 100 Idaho 91, 593 P.2d 995 (1979); *Martin v. Clements*, 98 Idaho 906, 575 P.2d 885 (1978). *See also*

---

1. "[6–1403] 6–1303. Length of time product sellers are subject to liability.—...

 \* \* \* \* \* \*

"(3) Statute of limitation. No claim under this chapter may be brought more than two (2) years from the time the cause of action accrued as defined in section 5–219, Idaho Code."

*Twin Falls Clinic & Hospital Bldg. v. Hamill*, 103 Idaho 19, 644 P.2d 341 (1982).

■ Here, the trial court found that Du-Pont's wrongful labeling occurred, if at all, at the time of the sale of the chemical to the former lessees-San Tan in the summer of 1978, and such being more than three years prior to the filing of the amended complaint, the court held the improper labeling claim to be barred under either I.C. § 6–1403(3) (two-year products liability statute of limitations) or I.C. § 5–218(3) (three-year statute of limitations for injury to goods). Hence, we affirm the summary judgment entered against plaintiffs and in favor of DuPont on the amended complaint.

■ The parties herein have not submitted argument regarding any continuing validity of plaintiffs' *original* complaint, albeit summary judgment was granted as to the *amended* complaint because it was time barred. Solely for the purpose of removing any doubt as to the finality of our disposition of the case, we note the following. Even assuming that plaintiffs' original complaint did not become *functus officio* by the filing of the amended complaint (*see, e.g., W.L. Scott, Inc. v. Madras Aerotech, Inc.*, 103 Idaho 736, 653 P.2d 791 (1982); *Shirts v. Shultz*, 76 Idaho 463, 285 P.2d 479 (1955)), we hold that the summary judgment order of the trial court was effective, not only as against plaintiffs' amended complaints, but also as to the original complaint. The decision of the trial court makes clear that, even if the original complaint retained validity following the amended complaint, DuPont's alleged failure to notify the former lessees-San Tan of improper use of the chemical did not proximately cause the plaintiffs' damages. The trial court stated:

> "It is a fundamental requirement of the law of torts that there be some reasonable connection 'between the act or omission of the defendant and the damage which the plaintiff has suffered.' (Prosser, *Law of Torts* (4th ed. 1971) at 236). An act or omission 'is not regarded as a cause or event if the particular event would have occurred without it.'

(Prosser, *supra* at 238; *People's Service Drugstores v. Somerville*, 161 Md. 662, 158 A.12 (1931); *Eck v. Helene Curtis Industries, Inc.*, [9 Ariz.App. 426] 453 P.2d 366 (Ariz.1969).

\* \* \* \* \* \*

> "... [P]laintiffs allege in their amended complaint that those lessees used the Lexone 'in quantities far in excess of manufacturer's recommended dosage...'. · The clear implication of this allegation is that *DuPont's labeling and recommendations did not mislead the former lessees in their use of Lexone* to plaintiffs' detriment." (Emphasis added.)

Appellants assert that the trial court erred in its holding that appellants had no cause of action against the former lessees-San Tan. Appellants argue that they have standing to recover for prior lessees-San Tan's waste and mistreatment of the Montierth property, and they base such contentions either on a contractual right arising out of appellants' own later lease with Montierth of the same land or on their status as third party beneficiaries of the lease contract between prior lessees-San Tan and Montierth. We hold that plaintiffs-appellants have no standing, and we affirm the entry of summary judgment on these claims. The record does not disclose, and we are not informed, if indeed plaintiffs-appellants suffered loss because of chemical contamination on the Montierth land, why plaintiffs-appellants have not asserted a cause of action against Montierth and/or why Montierth has not asserted an action against former lessees-San Tan.

Plaintiffs-appellants point to the covenant of former lessees-San Tan to treat the Montierth land "in a good and farmmanlike manner." They argue that such provision of that lease is one which runs with the land, and they assert that when they lease the premises from Montierth, they in essence occupy the shoes of the landlord, with all of the rights and privileges of owning the property, including the right to enforce the prior lease. Therein plaintiffs-

appellants fail to recognize the time limitations within which they enjoyed any rights to the land. Their interest, possessory and otherwise, began and ended on the specific dates set out in the lease between plaintiffs-appellants and Montierth. Any cause of action arising before or after that time belongs to the landlord Montierth. Plaintiffs-appellants lack privity of contract with the former lessees-San Tan. They cannot create a cause of action against the prior lessees-San Tan out of their own subsequent lease with Montierth. Such, of course, assumes the absence of an express third party beneficiary provision in the prior lessees-San Tan's lease with Montierth, which is discussed *infra*.

▮▮▮ It is axiomatic in the law of contract that a person not in privity cannot sue on a contract. "Privity" refers to "those who exchange the [contractual] promissory words or those to whom the promissory words are directed." Calemari and Perillo, Contracts § 17–1 (2d ed. 1977); *see generally* 4 Corbin on Contracts § 778 (1951). Here, plaintiffs-appellants are not parties to the prior lease between Montierth and San Tan, and hence they have no privity and cannot sue to enforce the terms of that prior contract. A party must look to that person with whom he is in a direct contractual relationship for relief, in the event that his expectations under the contract are not met. *Pierson v. Sewell*, 97 Idaho 38, 45, 539 P.2d 590, 597 (1975); *Minidoka County v. Krieger*, 88 Idaho 395, 399 P.2d 962 (1965); *Coburn v. Fireman's Fund Ins. Co.*, 86 Idaho 415, 387 P.2d 598 (1963).

▮▮▮ Under a lease of real property, the lessee has the possessory interest and the lessor has the reversionary interest. *See Eldredge v. Jensen*, 89 Idaho 243, 404 P.2d 624 (landlord's transfer of reversion did not affect tenant's leasehold interest); *Funk v. Funk*, 102 Idaho 521, 633 P.2d 586 (1981) (tenant must exercise his possessory rights in such a way as to not interfere with the landlord's ownership rights); *Olson v. Bedke*, 97 Idaho 825, 555 P.2d 156 (1976) (lessors may sue to prevent lessee's waste and destruction of the leased property).

▮▮▮ While a lessee has both contract rights and a *limited* ownership in the real property, *Krasselt v. Koester*, 99 Idaho 124, 125, 578 P.2d 240, 241 (1978), the tenant may only sue for damages to his leasehold interest, since only the landlord, as holder of the reversion, has standing to sue for injury to the realty itself. Thus, while the tenant may recover for damage to his leasehold during the pendency of his lease, only the landlord may recover from the responsible party for any difference in the value of the land, occasioned by actions preceding the term or surviving the term. *Jardell v. Sabine Irrig. Co.*, 346 So.2d 1365 (La.App.1977); *Mid-Continent Pipe Line Co. v. Blackburn*, 361 P.2d 845 (Okla.1961); *Libbra v. Mt. Olive & Staunton Coal Co.*, 79 Ill.App.2d 396, 172 N.E.2d 813 (1961); *Edwards v. Solar Oil Corp.*, 177 Kan. 219, 277 P.2d 614 (1954); *Ammons v. Central of Georgia R. Co.*, 215 Ga. 758, 113 S.E.2d 438 (1960). *See also* Annotation: Remedy of tenant against stranger wrongfully interfering with his possession, 12 A.L.R.2d 1192; Annotation: Liability for Interference with Lease, 96 A.L.R.3d 862.

In *Binder v. Perkins*, 213 Kan. 365, 516 P.2d 1012 (1973), plaintiffs' crop on leased property was damaged by chemical-spraying conducted by defendants on adjacent land. Plaintiffs sought the full value of their actual crops and of those crops expected to be grown under subsequent leases of the same property. The court held, 516 P.2d at 1017:

"Subsequent leases were placed in evidence and were objected to by defendant as being incompetent, irrelevant and immaterial to the question of plaintiffs' damages. The court erroneously overruled defendant's objection. *It was impossible for defendant to injure a right of possession that was not in existence at the time of the wrongdoing. (Tankersley v. Peabody Coal Co.*, 31 Ill.2d 496, 202 N.E.2d 498; *Funston v. Hoffman*, 232 Ill. 360, 83 N.E. 917; 51C C.J.S. Landlord and Tenant § 354, p.892.) Therefore, *we must reverse this decision and limit the time span of plaintiffs'*

*damages to the time span of the lease current at the time of defendant's negligence* and to the years 1969 and 1970.

"We must also limit the extent of plaintiffs' recovery by the terms of the lease. Plaintiffs' loss of value of their lease was equal to their share of the net value of the lost crops for those years, or two-thirds of the net income from the alfalfa. In *Edwards v. Solar Oil Corp.,* 177 Kan. 219, 277 P.2d 614, this court held:

'... If there has been an unauthorized or wrongful act which causes damages to the interests of a landowner and his tenant each has a cause of action but *each may recover only the damage to his own interest.* ...' (p. 223, 277 P.2d at p. 617.)" (Emphasis added.)

*See also Wangsgard v. Fitzpatrick,* 542 P.2d 194 (Utah 1975).

We hold that plaintiffs-appellants have no contractual right arising out of the lease between prior lessees-San Tan and Montierth. We note that, while plaintiffs-appellants, under some circumstances, might look to the landlord for recovery where the land is proved unsuitable for the purpose for which it was leased, *West v. Brenner,* 88 Idaho 44, 396 P.2d 115 (1964), that question is not presented here, and we will not make or design a better contract for the parties than that on which they have agreed between themselves. *Miller v. Remior,* 86 Idaho 121, 383 P.2d 596 (1963); *J.R. Simplot Co. v. Chambers,* 82 Idaho 104, 350 P.2d 211 (1960); *Sorensen v. Larue,* 43 Idaho 292, 252 P. 494 (1926).

Plaintiffs-appellants next assert that they are third party beneficiaries of the lease between prior lessees-San Tan and Montierths. The trial court rejected that claim, citing *Canyon View Irrigation v. Twin Falls Canal,* 101 Idaho 604, 619 P.2d 122 (1980), *cert. denied,* 451 U.S. 912, 101 S.Ct. 1983, 68 L.Ed.2d 301 (1981), and *Just's, Inc. v. Arrington Construction Co.,* 99 Idaho 462, 583 P.2d 997 (1978).

In *Canyon View Irrigation v. Twin Falls Canal,* we explained the nature of the third party beneficiary doctrine:

"Idaho recognizes the right of a third party to enforce a contract 'made expressly for [his] benefit.' I.C. § 29–102. However, absent a manifest intent to benefit the third party, courts are hesitant to enforce a contract on his behalf.

" ' "Thus, before recovery can be had by a third party beneficiary, it must be shown that the contract was made for his direct benefit, or as sometimes stated primarily for his benefit, and that it is not sufficient that he be a mere incidental beneficiary. Furthermore, such a contract must be strictly construed in favor of the person against whom such liability is asserted." ' " *Dawson v. Eldredge,* 84 Idaho 331, 337, 372 P.2d 414, 418 (1962) quoting *Sachs v. Ohio Nat. Life Ins. Co.,* 148 F.2d 128, 131 (7th Cir.1945)."

101 Idaho at 612–613, 619 P.2d at 130–131.

 A lease, like any other contract, is to be construed to give effect to the intention of the parties. *Jenkins v. Donaldson,* 91 Idaho 711, 429 P.2d 841 (1967); *West v. Brenner,* 88 Idaho 44, 396 P.2d 115 (1964); *Coppedge v. Leiser,* 71 Idaho 248, 229 P.2d 977 (1951). In order to ascertain that intent of the parties, we must construe the contract as a whole. *Canyon View Irrigation, supra; West v. Brenner, supra.* Nothing in the lease contract between Montierths prior lessees-San Tan indicates any intention that any of the provisions thereof should inure to the benefit of any subsequent lessees. The only provision of the prior lease which could be argued to bestow a benefit on subsequent lessees is a section providing, "The agreements herein contained shall be binding upon, apply and inure to the landlord's and tenant's respective heirs, executors, administrators, successors and assigns." We agree with the holding of the trial court that such provision did not refer to tenants under some future, then unknown, lease, but only to successors or assignees of the specific lease within which the language appears, *i.e.,* of the lease between Montierths and prior lessees-San Tan. Plaintiffs-appellants here were not mentioned as

individual beneficiaries of that lease, nor do they belong to any class specifically referred to therein.

Plaintiffs-appellants rely heavily upon the case of *Just's, Inc. v. Arrington Construction Co.*, 99 Idaho 462, 583 P.2d 997 (1978). *Just's* involved a contract between a city and a construction company for the renovation of a downtown Idaho Falls business district, under a local improvement district. The actions of the construction company damaged the plaintiffs, who were individual merchants within the local improvement district.

The contract under dispute in *Just's* contained several provisions which the court held were demonstrable of an intent by the contracting parties to benefit the individual merchants in the local improvement district. In *Just's*, at the time the construction contract was signed between the LID and the construction company, the plaintiffs' leasehold interest was already in existence and hence the plaintiffs were identifiable parties, specifically intended to be third party beneficiaries of that lease. We find *Just's, Inc. v. Arrington Construction Co., supra*, to be distinguishable from the instant case. We hold that the trial court correctly refused to hold that the plaintiffs had the status of third party beneficiaries under the lease between prior lessees-San Tan and Montierths.

The decision of the district court is affirmed in all respects. Costs to respondents. No attorney's fees on appeal.

DONALDSON, C.J., BAKES, J., and McFADDEN, J. Pro Tem, concur.

BISTLINE, Justice, concurring.

On studying the first opinion for the Court, now withdrawn in favor of the opinion issued today, it seemed to me self-evident that neither *Ada County Highway District v. Acarrequi*, 105 Idaho 873, 673 P.2d 1067 (1983), nor *Wheeler v. McIntyre*, 100 Idaho 286, 596 P.2d 798 (1979), supported the holding that the plaintiffs' amended complaint was not entitled to the benefit of the doctrine of relation back.

While I continue to adhere to that belief, on a further review of the trial court's Memorandum Opinion and Order in granting a summary judgment to DuPont, I am brought to the conclusion that the plaintiffs are reaching too far in their assertion that the complaint and the amended complaint allege nearly identical facts and conduct in respectively alleging:

The Complaint:

Defendant Dupont was negligent in failing to take some action to prevent such misuse in the application of the product.

The Amended Complaint:

Defendants ... negligently failed to warn or advise or properly label its product in a manner which would give notice or warning of the dangerous propensities of said product.

Dupont was negligent and careless in failing to give warnings with regard to its chemical product Lexone, and that as a direct result of Defendant Dupont's negligent failure to warn Plaintiff suffered damages.

Judge Durtschi's opinion and order make clear the reasons why this Court should this day not utilize a relation back:

Thus, an amendment to a complaint will not be allowed to relate back (1) if the opposing party would not have notice of the new claim from the facts set forth in the original complaint, *Raven v. Marsh*, [94 N.M. 116, 607 P.2d 654] *supra*; (2) if the opposing party attempts to raise a new legal theory in its amended complaint which was not envisioned in its original complaint, *Barnes v. Callaghan*, [559 F.2d 1102] *supra*; or (3) if the party attempts to raise issues with regard to conduct which is different from, or occurred at a different time, from the conduct specified in the original complaint, *Textile Museum v. F. Eberstadt & Co.*, [453 F.Supp. 72] *supra*.

In the amended complaint in this action, plaintiffs allege that the containers of Lexone used by former lessees were defective in that they did not provide adequate warnings and that this fact resulted in plaintiffs' injuries. Plaintiffs'

original theory was based solely on the alleged knowledge of the DuPont agent, Sam Sherman, of the misuse of the chemical Lexone by former lessees. Plaintiffs' new theory has nothing to do with the alleged knowledge of DuPont, but rather involves the adequacy of the warning labels on the containers of Lexone. Nowhere in the original complaint is there even a hint that the warning labels on the product Lexone were inadequate or that the product Lexone was in any way defective or inadequate.

Plaintiffs' amended complaints allege wrongful conduct on the part of DuPont arising at a different time and with regard to a different set of facts than were involved in the original complaint. In the original complaint, plaintiffs' only allegation against DuPont concerned facts allegedly occurring during the time former lessees were misapplying the chemical Lexone. The amended complaints involve conduct on the part of DuPont with regard to the labeling of its product, such conduct taking place at a different time and at a different location. Hence, the new theory of plaintiffs involves a totally different set of legal issues, facts, time periods, and people and would bring into play "a multiplicity of facts beyond" those brought forth in the original complaint. (*See Artman v. International Harvester Co., supra,* 355 F.Supp. at 476, 477 (W.D.Pa.1972)).

Since the original complaint did not give notice of the legal theory now advanced and the new theory is based on entirely different legal issues, facts, time periods and people, the new theory will be deemed to be a new cause of action and will not relate back for purposes of avoiding the statute of limitations. R., pp. 158–59.