No. 12        May 18, 2023        61

# IN THE SUPREME COURT OF THE
# STATE OF OREGON

RON Adelsperger;
Sally Adelsperger; Walter Arnold; Sandy Arnold;
Larry Brewer; Marilyn Brewer;
James Brown; Lonna Brown;
Bill Burgess; Jane Burgess; Shirley Calkins;
Jerry Christensen, aka Gerald Christenson;
Cindy Christensen, aka Cynthia Evans-Christenson;
Russell Cobb; Norma Cobb; Ron Ellis; Sallie Ellis;
Amy Flickenger Pierpoint, aka Amy Flickenger-Pierpoint;
Glen Pierpoint; Mike Fredrickson; Tresea Fredrickson;
David Fulcer; Sarah Fulcer;
Jack Gibson; Sharon Sue Gibson, aka Sue Gibson;
Mary Gray; Rudolph Hanna; Brenda Hanna;
Gerald Hastings, aka Jerry Hastings;
Shirley House; Michael Huntley; Gloria Huntley;
Rodney Hyde, aka Rod Hyde; Patricia Hyde;
Johnnie Issacs, aka Johnnie Isaacs;
Rowina Issacs, aka Rowena Isaacs;
Don Johnson, aka Donald Johnson; Linda Johnson;
Robert Kasmar; Linda Kasmar;
Kraig Knutson; Barbara Knutson;
Tom Kuntz; Brenda Kuntz;
Richard Mathis; Linda Mathis;
Gary McCord; Marie McCord;
David McReynolds; Joseph Moore; Geraldine Moore;
Adam Morgan; Vicky Morgan, aka Victoria Morgan;
Thomas Noel; William Oar;
Donald Partridge, aka Don Partridge;
Lucille Partridge, aka Lucy Partridge;
Craig Pedersen; Cheryl Pedersen;
David Smith; Carol Smith;
William Thomas, aka Bill Thomas; Jackie Thomas;
Fred Waidtlow; Linda Waidtlow;
Gary Wayman; Charlotte Wayman;
David Weberg; Jeanne Weberg;
Forrest Wheeler; and Jane Wheeler,
*Petitioners on Review,*

*v.*

ELKSIDE DEVELOPMENT LLC,
Successor in Interest to Osprey Point RV Park, LLC,
and Barnett Resorts, LLC, an Oregon Limited Liability
Company, dba Osprey Point RV Resort,
*Defendants,*
*and*

Chris BARNETT
and Stefani Barnett,
*Respondents on Review.*

(CC 19CV14756) (CA A174502) (SC S069449)

On review from the Court of Appeals.*

Argued and submitted January 18, 2023.

Ronald L. Sperry III, Johnson & McKinney DBA DC Law, Roseburg, argued the cause and filed the brief for petitioners on review. Also on the brief was Dan G. McKinney.

Elizabeth W. Armitage, Frohnmayer, Deatherage, Jamieson, Moore, Armosino & McGovern, P.C., Medford, argued the cause and filed the brief for respondents on review. Also on the briefs was Tracy M. McGovern.

Before Flynn, Chief Justice, and Duncan, Garrett, DeHoog, Bushong, and James, Justices.**

JAMES, J.

The decision of the Court of Appeals is affirmed in part, affirmed in part by an equally divided court, and reversed in part. The judgment of the circuit court is affirmed in part, affirmed in part by an equally divided court, and reversed in part, and the case is remanded to the circuit court for further proceedings.

Bushong, J. concurred in part and dissented in part and filed an opinion, in which Garrett and DeHoog, JJ., joined.

_____

* Appeal from Coos County Circuit Court, Andrew E. Combs, Judge. 317 Or App 666, 504 P3d 1 (2022).

** Nelson, J., resigned February 25, 2023, and did not participate in the decision of this case.

**JAMES, J.**

This case comes to us upon the grant of summary judgment. Elkside Development LLC (Elkside) owned and operated the Osprey Point RV Resort in Lakeside, Oregon. Part of Elkside's business model involved selling membership contracts that conferred free use of the campground, among other benefits. In April 2017, Barnett Resorts, LLC, an Oregon limited liability company operated by member-managers Stefani Barnett and Chris Barnett, purchased Elkside. Shortly after the purchase, Stefani Barnett and Chris Barnett sent a letter to all campground members, identifying them as "owners" of the resort, and indicating that they would not honor Elkside's membership contracts. Plaintiffs—a group of 71 people who, collectively, were party to 39 membership contracts with Elkside—brought suit alleging a variety of claims against Stefani Barnett and Chris Barnett individually, and against the company, Barnett Resorts, LLC. Three of those claims have formed the basis of the parties' arguments on appeal. For our purposes, they can be categorized as (1) a breach of contract claim; (2) an intentional interference with contract claim; and (3) a statutory claim of elder abuse, based on the fact that the majority of the membership contracts had been held by plaintiffs over the age of 65.[1]

As to the claims against Stefani Barnett and Chris Barnett individually, the trial court granted summary judgment for defendants, relying on ORS 63.165 and our opinion in *Cortez v. Nacco Materials Handling Group*, 356 Or 254, 280, 337 P3d 111 (2014).[2] ORS 63.165(1) provides:

"The debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, are solely the debts, obligations and liabilities of the limited liability company. A member or manager is not personally

---

[1] The other claims are variations, or attendant to, the three main categories of claims. For example, the first claim for relief seeks a declaratory judgment as to the existence of a contract. The third claim seeks the appointment of a trustee.

[2] The trial court allowed a breach of contract claim, and an elder abuse claim, against Barnett Resorts, LLC, to proceed, and the jury returned a verdict in favor of plaintiffs. Those claims form the basis of another pending appeal—*Adelsperger v. Elkside Development LLC*, 322 Or App 809, 523 P3d 142 (2022).

liable for a debt, obligation or liability of the limited liability company solely by reason of being or acting as a member or manager."

Plaintiffs appealed, arguing that the trial court erred in its understanding of ORS 63.165. Plaintiffs argued, in part, that whether ORS 63.165 shielded the Barnetts from liability required considering whether their actions were entirely in support of the LLC, or whether they were, instead, in furtherance of a non-LLC individual motive. The Court of Appeals heard oral argument, and then affirmed without opinion. We allowed review and now reverse in part the decision of the Court of Appeals and the judgment of the trial court: Specifically, we reverse as to the elder abuse claim, affirm as to the breach of contract claim, and affirm the intentional interference claim by an equally divided court.

## OVERVIEW

The contours of summary judgment review are set by the operative complaint and the specific arguments for summary judgment advanced by a party. Under ORCP 47 C, the party opposing summary judgment has the burden of producing evidence on any issue "raised in the motion" as to which that party would have the burden of persuasion at trial. *Two Two v. Fujitec America, Inc.*, 355 Or 319, 324, 325 P3d 707 (2014). But a party does not have the burden of producing evidence on an issue that is not raised in the motion. *Id.* at 325.

Once the parameters of what is, and is not, at issue in summary judgment are identified, we will affirm the trial court's judgment if we agree that "there is no genuine issue as to any material fact and *** the moving party [was] entitled to a judgment as a matter of law." ORCP 47 C; *see also Robinson v. Lamb's Wilsonville Thriftway*, 332 Or 453, 455, 31 P3d 421 (2001) (describing that standard on review). No issue of material fact exists if, viewing the evidence in the light most favorable to the nonmoving party—here, plaintiffs— "no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment." ORCP 47 C.

In accord with that standard, we begin by setting forth, in greater detail, plaintiffs' allegations in the first amended complaint, as well as defendants' framing of the basis for summary judgment. Plaintiffs' second claim for relief alleged a breach of contract claim against Elkside, Barnett Resorts, LLC, and the Barnetts individually, claiming that they had "breached the membership camping contract and guarantee with each Plaintiff by denying Plaintiffs the contractual right to the use of the Resort facilities set forth in the membership camping contracts." They further alleged that Elkside "breached the contracts by assigning its obligations to [Barnett Resorts, LLC] without permission or release from Plaintiffs. [Barnett Resorts, LLC] thereafter denied the Plaintiffs' rights under the membership camping contracts."

Plaintiffs' fourth claim for relief alleged a statutory elder abuse claim, asserting that both the Barnetts individually, as well as Barnett Resorts, LLC, had a "responsibility to honor the membership campground contracts of the Elderly Plaintiffs" and had "acquired a property right of the Elderly Plaintiffs (ORS 124.110[(1)](a)) or [held] in trust the annual dues and property rights of the Elderly Plaintiffs (ORS 124.110[(1)](b))." The claim then alleged that both Barnett Resorts, LLC and the individual defendants had "acted in bad faith in refusing to honor the property rights and knew or should have known that the Elderly Plaintiffs had the rights in the membership camping contracts and the rights to use the Resort."

Finally, plaintiffs' sixth claim for relief alleged intentional interference with contractual relations against both Barnett Resorts, LLC and the Barnetts individually. That claim was specifically raised as an alternative claim to the breach of contract, "in the event Defendants Barnett are found not to be a contractual successor to [Elkside] and bound as a contracting party to the membership camping contracts." In that alternative, plaintiffs alleged that the Barnetts intentionally interfered with the contractual relationship "between Plaintiffs and [Elkside] by acquiring the Resort with knowledge of the existence of the membership camping contracts and thereafter denying the Plaintiffs access to Resort facilities."

Defendants' arguments for summary judgment were undifferentiated by the individual claims in the complaint. Instead, defendants raised a unitary argument, against all claims and on behalf of all defendants equally, that primarily relied on the assertion that defendants had purchased property, not a business. Defendants challenged the recordation of the membership contracts, arguing that alleged failure to record prevented the contracts from encumbering the property. Without recordation, defendants argued, the membership camping contracts were retail installment contracts pursuant to ORS 94.989(2). Defendants argued that they had not purchased the contracts, only the land of the mobile home park. Those arguments encompassed almost the entirety of the summary judgment motion but were not the basis for the trial court's ruling and are not the subject of this appeal.

The argument that did form the basis of the trial court's partial grant of summary judgment occurs in the final two paragraphs of the summary judgment motion:

"Members of a limited liability company are personally liable only to the same extent and in the same manners as shareholders of a professional corporation. ORS 63.074(2). A member is not liable for the acts or debts of an LLC merely by reason of being a member. ORS 60.151(2).

"Plaintiffs have asserted claims against Barnett Resorts, LLC, but also against Chris and Stefani Barnett as the owners and operators of Barnett Resorts. It is axiomatic that an LLC owner or member is not liable for a claim against the LLC. Indeed, the purpose of organizing and carrying out business in an LLC, rather than some other form, is to avoid such liability. Barnett Resorts, LLC is the sole owner and operator of Osprey Point. Chris and Stefani Barnett are entitled to judgment as a matter of law."

As to the claims against the Barnetts individually, the trial court granted summary judgment for defendants, relying on ORS 63.165 and our opinion in *Cortez*, 356 Or at 280. As the trial court reasoned:

"The general rule regarding the liability of members and managers of limited liability companies in Oregon was explained in *Cortez*[, 356 Or at 280,] as follows:

"'ORS 63.165 immunizes members and managers of an LLC from vicarious liability for the debts, obligations, and liabilities of that LLC. LLC members and managers, however, remain personally liable for their acts and omissions to the extent those acts or omissions would be actionable against the member or manager if that person were acting in an individual capacity.'

"The court finds in the instant matter that of the six claims alleged by plaintiffs' in their first amended complaint, that none of those claims allege acts or omissions by defendants Chris Barnett or Stefani Barnett that would provide a basis for imposing personal liability on either. Chris Barnett and Stefani Barnett formed Barnett Resorts, LLC on February 27, 2017; Barnett Resorts LLC purchased the property on April 28, 2017; and Barnett Resorts LLC has been the owner of the property ever since. For these reasons, the court finds that defendants Chris Barnett and Stefani Barnett are entitled to summary judgment on all of plaintiffs' claims."

On appeal, defendants raise a number of arguments in defense of the trial court's ruling; however, many of those arguments are unpreserved. Defendants argue that plaintiffs' claims for elder abuse fail because defendants did not withhold money or property under ORS 124.110(1)(a) or (b). That argument was developed at trial, on the claims against Barnett Resorts, LLC that survived, but that was not an argument before the summary judgment court. Similarly, defendants argue that, as to the intentional interference claim, plaintiffs failed to provide evidence of an improper means or motive. That also was not an argument before the summary judgment court. As set forth above, the arguments on summary judgment were limited, and the sole basis of the court's grant of summary judgment was ORS 63.165. Accordingly, that is the singular issue we address.

With that background now set, we turn to *Cortez*, where we noted that the Oregon legislature patterned ORS 63.165 off the Uniform Limited Liability Company Act (ULLCA) (1996) and adopted verbatim subsections 303(a) and (b) from that uniform act. We noted that a comment to that section included the following statement:

> "'A member or manager is responsible for acts or omissions to the extent those acts or omissions would be actionable in contract or tort against the member or manager if that person were acting in an individual capacity. Where a member or manager delegates or assigns the authority or duty to exercise appropriate company functions, the member or manager is ordinarily not personally liable for the acts or omissions of the officer, employee, or agent [of the LLC] if the member or manager has complied with the duty of care set forth in Section 409(c).'"

*Cortez*, 356 Or at 267-68 (citing ULLCA § 303 comment (1996) (brackets in *Cortez*)). Accordingly, we held that "members and managers remain personally liable for the actions that they take on behalf of an LLC to the same extent that they would be liable 'if [they] were acting in an individual capacity.'" *Id*. at 268 (brackets in *Cortez*). We therefore turn to applying that principle to each of the three claims at issue here. We begin with plaintiffs' elder abuse claim, then proceed to consider the breach of contract claim, and conclude with the intentional interference with contract claim.

## ELDER ABUSE

ORS 124.100(2) provides that "[a] vulnerable person who suffers injury, damage or death by reason of physical abuse or financial abuse may bring an action against any person who has caused the physical or financial abuse or who has permitted another person to engage in physical or financial abuse." As used in the Oregon Revised Statutes, the term "person" is generally defined to include "individuals, corporations, associations, firms, partnerships, limited liability companies and joint stock companies." ORS 174.100(7) (so providing unless context or specific statutory definition provides otherwise). By its terms, then, an action for elder abuse can lie against a corporate abuser, as well as those people who have "permitted" the corporation to abuse the elderly person.

To what extent, if at all, ORS 63.165 operates to preclude a claim for elder abuse, under ORS 124.100(2), is a question of statutory interpretation. We approach such questions with the "paramount goal" to discern the intention of the legislature. *State v. Gaines*, 346 Or 160, 171, 206 P3d

1042 (2009). In pursuing that goal, we give primary weight to the text and context of the disputed statutory terms. *Id.* As we emphasized in *Gaines*, "there is no more persuasive evidence of the intent of the legislature than the words by which the legislature undertook to give expression to its wishes." *Id.* (internal quotation marks omitted).

ORS 124.100(2), by its terms, contemplates direct liability in tort for an individual who permits another— including a corporation—to commit elder abuse. The parties have provided us no legislative history that would contradict the plain text, and our review of the history of ORS 124.100(2) shows no indication that the legislature sought to exclude from direct liability those who permitted abuse by a corporate actor.

As part of construing the text and context of a statute, we also look to case law construing the statute at issue. *See Sherman v. Dept. of Human Services*, 368 Or 403, 411-12, 492 P3d 31 (2021) (so demonstrating). In imposing direct liability for those who permit another to commit elder abuse, ORS 124.100(2) bears similarity to the statute at issue in *Cortez*. There, we considered a workplace safety statute that imposed obligations on a person who "retains the right to control the manner or method in which the risk-producing activity was performed." 356 Or at 273. The plaintiff in *Cortez* was injured while working for a lumber mill owned by an LLC and sued the member-manager of the LLC, arguing that the member-manager was a person subject to the statute. *Id.* at 256. The member-manager argued that, under ORS 63.165(1), it could not be held personally liable for harm arising out of the LLC's business operations based on "merely having the authority to require the LLC to prevent a workplace accident." *Id.* at 263.

We held that ORS 63.165(1) did not shield the member-manager of an LLC from liability for failing to satisfy the statutory safe-workplace obligations. We reasoned that "ORS 63.165(1) immunizes [the LLC member] only from *vicarious* liability for the LLC's obligations," and not from liability for its own omissions if, having retained control, the person failed to provide, or to require the LLC to provide, a safe workplace. *Id.* at 264.

Later, in *Kinzua Resources v. DEQ*, 366 Or 674, 468 P3d 410 (2020), we considered two additional statutes— ORS 459.205 and ORS 459.268—which imposed obligations on the permit holder for the proper closure of a landfill. We construed the landfill permit statutes with ORS 63.165(1) and concluded that individual liability for LLC member-managers was permissible:

> "The commission contends that ORS 63.165(1) permits it to impose liability based on [the] petitioners' own failure to perform obligations with which they were individually charged in their capacity as persons 'controlling' the landfill.
>
> "We agree with the commission that ORS 459.205 and ORS 459.268 impose obligations directly on each person 'controlling' a landfill and that liability for the person's own failure to satisfy those obligations is direct liability, which ORS 63.165(1) does not prevent."

*Kinzua Resources*, 366 Or at 687.

Like the statutes at issue in *Cortez* and *Kinzua Resources*, ORS 124.100(2) creates liability for those that perpetrate elder abuse, as well as those who *permit others* to perpetrate elder abuse.[3] That liability is not vicarious; it is direct. In such an instance, ORS 63.165(1) is not a bar to asserting a claim for a statutory violation of ORS 124.100(2) against a member-manager of an LLC, when the LLC is alleged to be the entity that directly perpetrated the elder abuse. The trial court erred in granting summary judgment as to this claim.

## BREACH OF CONTRACT

We turn now to plaintiffs' second claim for relief— breach of contract. Here, we agree with the trial court that there is no evidence that the Barnetts, acting in their individual capacity, breached the contract. As we explain, the trial court was therefore correct to preclude this claim according to ORS 63.165.

---

[3] We are not called upon here to delineate the boundaries of what constitutes permission under the statute.

It is well established, both in Oregon and elsewhere, that generally speaking, but with some exceptions, privity of contract is an essential prerequisite to a breach of contract claim. *See, e.g.*, *Davis v. Homasote Company*, 281 Or 383, 386, 574 P2d 1116 (1978); *DAFCO LLC v. Stewart Title Guar. Co.*, 156 Idaho 749, 754, 331 P3d 491, 496 (2014) ("It is axiomatic in the law of contract that a person not in privity cannot sue on a contract." (Quoting *Wing v. Martin*, 107 Idaho 267, 272, 688 P2d 1172, 1177 (1984).)); *Danielkiewicz v. Whirlpool Corp.*, 426 F Supp 3d 426, 432 (ED Mich 2019) (citing the same); *Yucyco, Ltd. v. Republic of Slovenia*, 984 F Supp 209, 215 (SD NY 1997) (stating that a plaintiff "may not assert a cause of action to recover damages for breach of contract against a party with whom it is not in privity" of contract); *Cent. Con. Co. v. Paradise Valley Utility*, 634 P2d 346, 348 (Wyo 1981) ("[P]rivity of contract is an essential element [for] a cause of action on a contract[.]" (Internal quotation marks omitted.)).

Here, the parties do not dispute that the Barnetts, individually, are not signatories to the contracts at issue. The membership contracts existed between Elkside and plaintiffs. The purchase of Osprey Point was accomplished through a contract between Elkside and Barnett Resorts, LLC. To the extent that the Barnetts took any action in that contract formation, they did so solely as agents of the LLC. Accordingly, and as the parties effectively acknowledged at oral argument, the Barnetts, individually, are not in privity with any of the plaintiffs or Elkside as to the contracts at issue.

Under ORS 63.165, member-managers remain personally liable for their acts or omission only to the extent that "those acts or omissions would be actionable against the member or manager if that person were acting in an individual capacity." *Cortez*, 356 Or at 280. That concept presumes that "those acts or omissions" *could* have been undertaken by a person in their individual capacity. In this case, the Barnetts lack privity with Elkside or plaintiffs. Absent certain circumstances not present here, such as issues of implied warranty, a nonparty to a contract cannot bring suit for breach of that contract, and in reverse, parties to a contract cannot bring suit against a third-party for breach of the contract. Thus, as alleged by plaintiffs, any "acts or

omissions" by the Barnetts with respect to the contract could not possibly have been undertaken in their individual capacities. As such, the trial court did not err in granting summary judgment as to the breach of contract claim against defendants Stefani Barnett and Chris Barnett individually.

## INTENTIONAL INTERFERENCE

Finally, we turn to plaintiffs' sixth claim, intentional interference with contractual relations. "A mere breach of contract cannot be sued on as a tort, but for tortious acts, independent of the contract, a man may be sued in tort, though one of the consequences is a breach of his contract." *Harper v. Interstate Brewery Co.*, 168 Or 26, 37-38, 120 P2d 757 (1942) (citing *Stock v. City of Boston*, 149 Mass 410, 21 NE 871, 872, 14 Am St Rep 430 (1889)). Intentional interference with economic or contractual relations is the name we give to tortious conduct, independent of a contract, that brings about a breach of that contract.

To state a claim for intentional interference with economic or contractual relations, a party must allege each of the following elements: (1) the existence of a professional or business relationship, (2) intentional interference by the third party with the relationship, (3) that the interference was accomplished through improper means or for an improper purpose, (4) the interference caused damage to the economic relationship, and (5) damages. *McGanty v. Staudenraus*, 321 Or 532, 535, 901 P2d 841 (1995); *Straube v. Larson*, 287 Or 357, 360-61, 600 P2d 371 (1979); *Wampler v. Palmerton*, 250 Or 65, 73-76, 439 P2d 601 (1968); *see Lewis v. Oregon Beauty Supply Co.*, 302 Or 616, 621, 733 P2d 430 (1987), *overruled in part on other grounds by McGanty*, 321 Or 532 (complaint must allege "[e]ither the pursuit of an improper objective of harming plaintiff or the use of wrongful means that in fact cause injury to plaintiff's contractual or business relationships"); *see also Sheets v. Knight*, 308 Or 220, 237, 779 P2d 1000 (1989), *overruled in part on other grounds by McGanty*, 321 Or 532 (holding same); *Top Service Body Shop v. Allstate Ins. Co.*, 283 Or 201, 205, 582 P2d 1365 (1978) (holding same).

In applying that rule here, it is important to call attention to how the claim was pleaded in this instance.

Plaintiffs asserted an intentional interference claim as an *alternative* to their breach of contract claim. As plaintiffs stated in the first amended complaint, the claim was triggered only "in the event Defendants Barnett are found not to be a contractual successor to [Elkside] and bound as a contracting party to the membership camping contracts." As such, the claim would only exist if it was determined that Barnett Resorts, LLC was not a successor in interest to Elkside and did not assume the obligations of Elkside's contracts with the plaintiffs. Further, plaintiffs did not allege that the Barnetts, individually, had interfered with Barnett Resorts, LLC's contract. Rather, the claim asserted that Barnett Resorts, LLC, and the Barnetts individually, interfered as third parties to a contract between plaintiffs and Elkside. That interference was alleged to be accomplished by "acquiring the Resort with knowledge of the existence of the membership camping contracts and thereafter denying the Plaintiffs access to Resort facilities."

So framed, ORS 63.165 is not an obvious bar. Both individuals and corporations can be liable for intentional interference in economic and contractual relations. In the situation presented here, when both the LLC and its member-manager are alleged to have acted tortiously vis-à-vis a contract between third parties, the individual liability of the member-manager under ORS 63.165 turns upon principles of agency—whether the member-manager acted upon individual motives, and for individual benefit, or merely acted as an agent of the corporation, in furtherance of a corporate motive. "So long as the officer or employee acts within the general range of his authority intending to benefit the corporation, the law identifies his actions with the corporation." *Wampler*, 250 Or at 76-77.

Before the trial court and the Court of Appeals, plaintiffs argued that the trial court erred in failing to consider whether a genuine issue of material fact existed as to whether the Barnetts interfered in furtherance of personal motives, or merely in their capacity as agents of the LLC. Plaintiffs were correct. The trial court's grant of summary judgment—based solely on ORS 63.165, without consideration of whether the Barnetts were acting within their authority for the benefit of the corporation, or for individual

motives—was misplaced, and the trial court erred. *See, e.g.*, *Bova v. City of Medford*, 262 Or App 29, 43, 324 P3d 492, *rev den*, 356 Or 516 (2014) (reversing grant of summary judgment based on an incorrect statutory interpretation).

Our holding here is narrow and confined to the particularities of the parties' arguments and the trial court's reasoning. ORS 63.165 was the argument raised in defendants' summary judgment motion as to the elder abuse and intentional interference claim, and the sole basis of the trial court's ruling. No opinion is offered as to whether summary judgment might be appropriate on some alternative grounds. As discussed, the alternative arguments presented on appeal were not before the trial court, and no party has invoked a "right for the wrong reasons" rationale. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (setting out conditions for affirmance under a "right for the wrong reasons" basis); *State v. Rogers*, 330 Or 282, 295, 4 P3d 1261 (2000) ("The 'right for the wrong reason' principle establishes that appellate courts may examine legal arguments not relied on by a trial court to determine if those arguments provide a basis for affirmance."). The foregoing analysis is simply that, on this record, ORS 63.165 did not bar plaintiffs' claim such that summary judgment was required.

It is worth noting that the claims that survived summary judgment here, against Barnett Resorts, LLC, proceeded through verdict, and that verdict is now the subject of a different appellate proceeding—*Adelsperger v. Elkside Development LLC*, 322 Or App 809, 523 P3d 142 (2022). It is certainly possible that the ultimate resolution of the issues presented in that case may ultimately affect the claims at issue here. As the dissent notes, whether this decision will have a meaningful affect upon the parties is a prudential concern. *See, e.g.*, *City of Damascus v. State of Oregon*, 367 Or 41, 68 n 13, 472 P3d 741 (2020) ("We express no opinion here regarding the circumstances in which advisory opinions may or may not be unconstitutional * * *. The point is that there are prudential and jurisprudential reasons to avoid unnecessarily deciding legal issues that may be presented in a case, if the case can be appropriately resolved on more limited grounds."). However, at this point in time, that

case has not reached finality, and we will not prognosticate its future. The dissent would hold the decision in this case, to avoid "piecemeal litigation of related claims." However, it is not prudent to intentionally delay issuance of a decision in this matter to await an unknown outcome when no lower court has consolidated the cases, and no party has moved for the cases to be consolidated, nor asked this court to hold a decision in abeyance. The ultimate applicability of that other case to the claims here is left to the sound wisdom of the trial court upon remand.

The decision of the Court of Appeals is affirmed in part, affirmed in part by an equally divided court, and reversed in part. The judgment of the circuit court is affirmed in part, affirmed in part by an equally divided court, and reversed in part, and the case is remanded to the circuit court for further proceedings.

**BUSHONG, J.,** concurring in part, dissenting in part.

I agree with the majority's disposition of the elder abuse and breach of contract claims, and I join in the majority opinion on those claims.[1] I write separately, however, to explain my preferred approach as a procedural matter as to the elder abuse and intentional interference claims, and relatedly, why I disagree with the majority's disposition of the intentional interference claim. I would await the final appellate disposition of *Adelsperger v. Elkside Development LLC*, 322 Or App 809, 523 P3d 142 (2022) (*Adelsperger II*), recently decided by the Court of Appeals and involving similar claims from these same plaintiffs,[2] before addressing the elder abuse and intentional interference claims in this case. In my view, we should not be addressing those claims at this stage of the proceeding, because they are intertwined with the issues decided in *Adelsperger II*. The final disposition of those issues may, in the end, transform the majority

---

[1] For ease of reference, I use the term "majority opinion" throughout this opinion in referring to the opinion authored by Justice James. However, that opinion is not truly a "majority" opinion as to the intentional interference claim, which we are affirming by an equally divided court.

[2] The Court of Appeals denied petitions for reconsideration in *Adelsperger II* on March 31, 2023. On May 5, plaintiffs petitioned this court for review of the Court of Appeals' disposition of their elder abuse claim.

opinion into an advisory opinion that has no practical effect on the parties. At the very least, deciding those issues now unnecessarily continues the piecemeal litigation of related claims.[3]

In reversing the trial court's summary judgment ruling on the two noted claims against defendants Stefani and Chris Barnett (the Barnetts), the majority opinion concludes that ORS 63.165 does not shield them individually from liability for elder abuse or intentional interference with contract. On the elder abuse claim, the majority opinion concludes that ORS 63.165 is not a bar to asserting the claim against the Barnetts individually simply because the entity alleged to have "directly perpetrated the elder abuse" is the LLC and not its individual members. 371 Or at 72. But, in *Adelsperger II*—which involves the same claims as asserted by these same plaintiffs against Barnett Resorts, LLC—the Court of Appeals determined that plaintiffs had failed to prove at trial that the LLC had perpetrated elder abuse. *Adelsberger II*, 322 Or App at 827.

Similarly, the majority opinion acknowledges that the intentional interference claim "would only exist if it was determined that Barnett Resorts, LLC was not a successor in interest to Elkside [Resorts LLC] and did not assume the obligations of Elkside's contracts with the plaintiffs." 371 Or at 74. But again, in *Adelsperger II*, the Court of Appeals concluded that sufficient evidence at trial had supported the jury's conclusion that Barnett Resorts, LLC had been a successor in interest and thus had assumed the obligations of Elkside's contracts with the plaintiffs. 322 Or App at 819-20.

If the Court of Appeals' resolution in *Adelsperger II* of those claims as to the LLC becomes final, then the majority opinion's resolution of the issues in this case—whether the trial court properly granted summary judgment to the Barnetts under ORS 63.165 on those same two claims—would amount to an advisory opinion that has no practical effect on the parties. And if the Court of Appeals' resolution of those claims in *Adelsperger II* does not become final—that is, if we allow plaintiffs' pending petition for review—then

---

[3] My views expressed in this opinion do not apply to the breach of contract claim addressed in the majority opinion.

deciding now that the Barnetts might be liable on those claims and deciding later whether the Court of Appeals correctly resolved those claims against the LLC would continue the piecemeal litigation of these related claims.

We typically seek "to avoid piecemeal litigation of multiple claims likely to involve related facts." *Thompson v. Coughlin*, 329 Or 630, 637, 997 P2d 191 (2000). And there are prudential reasons to avoid unnecessarily deciding issues that may not have any practical effect on the parties. *See City of Damascus v. State of Oregon*, 367 Or 41, 68 n 13, 472 P3d 741 (2020) ("We express no opinion here regarding the circumstances in which advisory opinions may or may not be unconstitutional[.] *** Our point is that there are prudential and jurisprudential reasons to avoid unnecessarily deciding legal issues that may be presented in a case, if the case can be appropriately resolved on more limited grounds.").

The majority opinion acknowledges that final resolution of the claims against the LLC may affect the ultimate disposition of the claims against the Barnetts. 371 Or at 75. The majority opinion also acknowledges that, depending upon how the claims against the LLC are ultimately resolved, today's decision may not have any meaningful effect on the parties. *Id.* at 75-76. Nevertheless, it concludes that it would not be prudential to await the final resolution of the claims against the LLC. *Id.*

The majority justifies that conclusion by treating *Adelsperger II* as a different "case" that has not been consolidated with this case, concluding that the "ultimate applicability of that other case" to the claims here should be left to the trial court. *Id.* at 76. But there is no "other case"; there is one action commenced by filing a complaint that ultimately resulted in splintered appeals, each of which were assigned different case *numbers. See* ORCP 3 ("[A]n action shall be commenced by filing a complaint with the clerk of the court."). The claims addressed by the majority opinion and by the Court of Appeals in *Adelsperger II* were asserted in the same complaint filed in the same action.

I suggest that, under the circumstances, the prudential decision would be to await final resolution of the

claims against the LLC, and then resolve all the remaining claims asserted in this action at once.

In addition, I disagree with the majority's disposition of the intentional interference claim for a reason that further highlights why we should not be deciding that alternative claim at all. The majority opinion called attention to how this claim was pleaded—as an alternative to the breach of contract claim—and framed the issue as whether ORS 63.165 barred a claim asserting that the Barnetts individually (and the LLC) interfered with contracts between plaintiffs and Elkside. 371 Or at 74.

The majority then concludes that ORS 63.165 is not "an obvious bar" to the claim because, under *Wampler v. Palmerton*, 250 Or 65, 74-77, 439 P2d 601 (1968), the claim hinges on whether "the Barnetts were acting within their authority for the benefit of the corporation, or for individual motives[.]" 371 Or at 74-75; *see also id.* at 74 (citing test under *Wampler*); *id.* (applying test).

However, the circumstances presented here are different from those presented in *Wampler*, and the majority's application of the *Wampler* test for determining individual liability of corporate officials in this context is flawed. The plaintiff in *Wampler* alleged that the individual defendants—the president and a business advisor of Diamond Lake Lumber Company (Diamond Lake)—were liable for interfering with a logging contract between the plaintiff and Diamond Lake. A jury ruled in favor of the plaintiff, and the individual defendants appealed. 250 Or at 67-68.

This court first noted that, "[i]n the usual interference with a contract situation, the person interfering is a complete stranger to the contractual relationship." *Id.* at 74. But *Wampler* added a "complicating ingredient *** where the party induced to breach its contract is a corporation and the third person who induces the breach is not a stranger, but is a person who, by reason of his position with the corporation, owes a duty of advice and action to the corporation." *Id.* The interest protected by an interference with contract claim "is the interest of the plaintiff in not having his contract rights interfered with by intermeddling strangers."

*Id.* at 77. Thus, "so long as the person inducing the breach of a corporate contract is an officer or employe[e] acting for the benefit of the corporation and within the scope of his authority, the plaintiff cannot show that this interest was invaded and therefore cannot maintain an interference with contract action." *Id.*

"On the other hand," the *Wampler* court explained, "there is no reason to protect corporate officers or employe[e]s who authorize, direct and participate in tortious conduct by their corporate principal." *Id.* "If the corporation commits a tort as a result of such intentional action on the part of its officers or employe[e]s, these agents are also responsible." *Id.* Thus, whether there was a jury question as to the liability of the individual defendants in *Wampler* depended on "whether there [was] evidence that defendants were guilty of engaging in tortious conduct upon behalf of the corporation." *Id.* at 78. The *Wampler* court reviewed the evidence at trial, noting first that "there is no direct evidence of any bad motive or intent" in almost all cases "in which intent is in issue." *Id.* at 80. As a result, it was necessary for the court "to ascertain whether there [was] sufficient circumstantial evidence" of bad motive or intent. *Id.* Finding none in the trial court record, the court concluded that "[t]he trial court erred in failing to grant the defendants' motion for a directed verdict." *Id.* at 82.

Cases decided after *Wampler* have made it clear that an intentional interference with contract claim requires proof of "the pursuit of an improper objective of harming plaintiff or the use of wrongful means that in fact cause injury to plaintiff's contractual or business relationships." *Lewis v. Oregon Beauty Supply Co.*, 302 Or 616, 621, 733 P2d 430 (1987); *see also Sheets v. Knight*, 308 Or 220, 237, 779 P2d 1000 (1989), *abrogated in part on other grounds by McGanty v. Staudenraus*, 321 Or 532, 901 P2d 841 (1995) (plaintiff must plead and prove that defendant, "either with an improper objective or through improper means, purposefully interfered with the plaintiff's contractual relationship with some third party, thereby causing the plaintiff damage"). Thus, under *Wampler* and subsequent cases, for a corporate officer to be liable for intentionally interfering with a contract entered into by the corporation, the officer

must have authorized, directed, and participated in the corporation's tortious conduct, that is, conduct that not only amounted to a breach of contract but that was taken for improper motives or through improper means.

This case is different from *Wampler* because plaintiffs' claim here is that the Barnetts may be individually liable for interfering with contracts between plaintiffs and Elkside. In other words, this case involves "the usual interference with contract situation" where the persons alleged to have interfered with the contract—here, the Barnetts—are strangers to the contractual relationship with which they allegedly interfered. Thus, it is not clear that *Wampler* even applies here. Moreover, even assuming that *Wampler* is on point, applying the *Wampler* test would seem to require the court to review the summary judgment record to determine whether it contains direct or circumstantial evidence that the Barnetts acted with "bad motive or intent" in causing Barnett Resorts, LLC to tortiously interfere with the contracts between plaintiffs and Elkside.

The majority opinion does not (1) explain why the *Wampler* test applies in this context; (2) explain why "individual motives"—not "bad motives or intent"—would be enough to meet the *Wampler* test in this context; or (3) review the summary judgment record to determine whether it contains evidence of both individual motives and "bad motive or intent" sufficient to avoid summary judgment. Instead, it just concludes that the trial court erred by granting summary judgment "without consideration of whether the Barnetts were acting within their authority for the benefit of the corporation, or for individual motives[.]" 371 Or at 74-75.

My disagreement with how the majority opinion disposes of the intentional interference claim highlights the reasons why we should not be reversing the trial court's decision to grant summary judgment on that claim—pled as an alternative to plaintiffs' breach of contract claim—at this stage of the proceedings. Accordingly, I dissent from that part of the majority opinion.

Garrett and DeHoog, JJ., join in this concurring and dissenting opinion.